**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Gino ANTIDORMI, Appellant.**

Superior Court of Pennsylvania.

Submitted April 15, 2013.
Filed Jan. 23, 2014.

743

Richard B. Henry, Honesdale, for appellant.

Janine Edwards, District Attorney, Honesdale, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER, J., and WECHT, J.

OPINION BY WECHT, J.

Gino Antidormi ("Appellant") appeals from his August 9, 2012 judgment of sentence. We affirm.

Appellant was arrested following a July 21, 2011 incident on Mill Brook Road in Cherry Ridge Township, Wayne County, Pennsylvania. Early on that morning, Appellant and three other occupants of a PT Cruiser were driving in the area and shooting firearms out of the vehicle. In the course of these events, a bullet was fired into a residence located at 87 Mill Brook Road. Shortly thereafter, local residents blockaded the road with their own vehicles and forced the joyriders to abandon their vehicle and flee on foot. The Pennsylvania State Police were alerted that same morning. After investigating the abandoned vehicle and interviewing three individuals suspected of being involved in the incident—Cody Reck, William Christopher Harper, and Gary Stephen Burton II—the Pennsylvania State Police obtained an arrest warrant for Appellant and the three interviewees that same day. The firearms used in the incident were recovered near the abandoned vehicle on or about July 23, 2011.

The trial court has summarized the remaining facts and procedural history of this case as follows:

On September 8, 2011, the Commonwealth filed an Information alleging [that Appellant had committed the following crimes:] Discharge of a Firearm into [an] Occupied Structure [1]; Crimi-

1. 18 Pa.C.S. § 2707.1(a).

nal Conspiracy[2]; Recklessly Endangering Another Person[3]; Criminal Mischief[—]Damage Property[4]; Persons Not to Possess, Use[ Firearms[5]; and Prohibited Offensive Weapons.[6]] At issue in [Appellant's] appeal is only the charge for Persons Not to Possess, Use[ ] Firearms. The Information alleged [that Appellant], having been previously convicted of an offense enumerated in 18 Pa.C.S. § 6105(b), possessed a sawed-off shotgun and a semi-automatic rifle on July 21, 2011.

[Appellant] was originally represented by Steven Burlein, Esq., a public defender. [Appellant's] trial was scheduled for November 8, 2011. On October 2[1], 2011, the trial was continued to January 2012 upon request of [Appellant]. On January 17, 2012, [Appellant] entered a guilty plea to Criminal Mischief and Persons Not to Possess[, Use] Firearms. On April 5, 2012, during his Sentencing Hearing, [Appellant] made certain demands upon the Sentencing Court. At that time, [Appellant] withdrew his guilty plea.

After Attorney Burlein filed a petition to withdraw as counsel, this Court appointed Pamela S. Wilson, Esq. to serve as counsel for [Appellant], due to [Appellant's] conflict with the Public Defender's Office. [Appellant's] case was set for trial in May 2012. Attorney Wilson requested a continuance to allow for sufficient time to prepare for trial. The motion for a continuance was granted and the case was continued until July 2012. On June 21, 2012, [Appellant] again requested a continuance, which [the trial court] denied. On June 25, 2012, [Appellant] again requested a continuance, which was denied. [Appellant's] jury was selected on July 10, 2012. [Appellant's] jury trial was set to begin on July 16, 2012[,] at 9:00 a.m. On July 16, 2012, [Attorney] Michael Pisanchyn requested a continuance stating that he had just been retained by [Appellant] on Friday, July 1[3], 2012. After the Commonwealth summarized the extensive history of this case, the [c]ourt denied the request for a continuance stating the case had been going on too long. Following the denial of the continuance, Attorney Wilson made an oral motion to withdraw as counsel. The Commonwealth objected to the withdrawal of Attorney Wilson. [Appellant] and Attorney Pisanchyn agreed to allow Attorney Wilson to withdraw, and the [t]rial [c]ourt granted the motion of Attorney Wilson.

On July 17, 2012, a jury found [Appellant] guilty of [Persons] Not to Possess[, Use] Firearms. Following the guilty verdict, [Appellant] entered a guilty plea to the charges of Recklessly Endangering Another Person and Criminal Mischief[-]Damage Property. Following [Appellant's] August 9, 2012[ ] Sentencing Hearing, [Appellant's] private counsel, Attorney Pisanchyn, withdrew his appearance. Ultimately, Richard B. Henry, Esq. was appointed to serve as counsel for [Appellant's] post-trial motions.

[The trial court] did not order [Appellant] to submit a Concise Statement of [Errors] Complained of on Appeal. Presumably without the assistance of his newly appointed counsel, [Appellant] filed a Statement of Matters Complained

2. 18 Pa.C.S. § 903(a).

3. 18 Pa.C.S. § 2705.

4. 18 Pa.C.S. § 3304(a)(1).

5. 18 Pa.C.S. § 6105(a)(1).

6. 18 Pa.C.S. § 908(a).

of on Appeal and an Amended Statement of Matters Complained of on Appeal. In his Statement of Matters Complained of on Appeal and his Amended Statement of Matters Complained of on Appeal, [Appellant] asserts error made by the [trial court] and the Prosecution.[7]

Trial Court Opinion ("T.C.O."), 11/3/2012, at 1–3.

Appellant raises the following issues for our consideration:

1. Whether the Trial Court erred in denying Appellant's request for continuance on the eve of trial?

2. Whether the Trial Court erred in denying Appellant's request for mistrial due to the fact that the Commonwealth had failed to disclose a potentially exculpatory finger print [*sic*] report?

3. Whether the Trial Court erred in denying Appellant's objection to the relevance and admission of peripheral and prejudicial testimony and evidence regarding a shooting spree potentially involving the Appellant?

4. Whether the Trial Court erred in its charge to the jury, erred in allowing replay of testimony and was the subject verdict slip proper?

5. Whether the evidence was sufficient to support a conviction of person to possess a firearm or was the conviction against the weight of the evidence?

6. Whether the Trial Court erred as a matter of law and/or committed an abuse of its discretion in imposing the sentence of August 9, 2012?

Brief for Appellant at 5. We will address each of Appellant's issues in turn.

■ In his first claim, Appellant alleges that the trial court erred in denying Appellant's fifth continuance request. Appellant argues that "[t]his denial jeopardized and imperiled [Appellant's] right to a full and complete defense at his trial." Brief for Appellant at 11. We disagree.

■ Our standard of review is well-established. "The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." *Commonwealth v. Boxley*, 596 Pa. 620, 948 A.2d 742, 746 (2008) (citing *Commonwealth v. Randolph*, 582 Pa. 576, 873 A.2d 1277, 1281 (2005)). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record[.]" *Id.* (internal quotation marks omitted). Moreover, "[a] bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa.Super.2012) (citing *Commonwealth v. Ah Thank Lee*, 389 Pa.Super. 201, 566 A.2d 1205, 1206 (1989)). "An appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time. We will not reverse a

---

7. Because the trial court did not order the filing of a Rule 1925(b) statement, we will not conduct a waiver inquiry pursuant to Pa. R.A.P. 1925(b)(4). The requirements of Rule 1925(b) are not invoked in cases where there is no trial court order directing an appellant to file a Rule 1925(b) statement. See *Commonwealth v. Thomas*, 305 Pa.Super. 158, 451

A.2d 470, 472 n. 8 (1982) ("[T]he lower court must order a concise statement of [errors] complained of on appeal and appellant must fail to comply with such directive before this Court can find waiver[.]"); *see also Commonwealth v. Hess*, 570 Pa. 610, 810 A.2d 1249, 1252 (2002).

denial of a motion for continuance in the absence of prejudice." *Id.* (quoting *Commonwealth v. Brown,* 351 Pa.Super. 119, 505 A.2d 295, 298 (1986)).

■ The record reveals that the trial court granted Appellant's first two requests for continuances on October 21, 2011, and May 15, 2012. Thereafter, Appellant made three additional continuance motions on June 21, June 25, and July 16, 2012, each of which was denied. The trial court has aptly responded to Appellant's assertion that Attorney Pisanchyn "had no time whatsoever to prepare for trial," Brief for Appellant at 13, in its Rule 1925(a) opinion:

[I]t is clear that [Appellant] did not exercise his right to choose private counsel at a reasonable [8] time. [Appellant] chose his private counsel three days prior to the start of trial. The Court had appointed counsel to [Appellant] on two other occasions in this matter. At the start of trial, [Appellant] was represented by private counsel and [ ] court-appointed counsel. [Appellant] elected not to object to the withdrawal of his court-appointed counsel. Further, the record in this case demonstrates that Attorney Pisanchyn's only reason for requesting the continuance was the fact that he was recently retained. **Attorney Pisanchyn's bald assertion of an insufficient amount of time to prepare is not sufficient.** Additionally, neither [Appellant] nor his counsel stated specifically how counsel would have prepared differently had counsel been given more time. [Appellant] has not, in any manner, indicated how he was prejudiced by the denial of his continuance.

T.C.O. at 8 (emphasis added). Appellant, again, has failed specifically to articulate how Attorney Pisanchyn would have prepared differently had the trial court granted Appellant's serial continuance motion. Appellant's brief is devoid of any such assertions. Appellant's claim amounts to a "bald allegation" of insufficient time to prepare. *See Ross,* 57 A.3d at 91.

We observe that the trial court granted Appellant's first two continuance requests to allow him to prepare for trial. Furthermore, this Court has "repeatedly condemned the practice of waiting until the day of trial to request a continuance for the purpose of obtaining a new attorney." *Commonwealth v. Boettcher,* 313 Pa.Super. 194, 459 A.2d 806, 810 (1983) (citing *Commonwealth v. Nicolella,* 307 Pa.Super. 96, 452 A.2d 1055, 1057 (1982)) (finding no prejudice in trial court's denial of a continuance request, when appellant already was represented by a public defender and waited until the day of trial to request a continuance to obtain private representation). Instantly, Appellant waited until the day of trial to request a continuance for the fifth time, relying solely on a bald allegation that Attorney Pisanchyn needed more time to prepare for trial. We conclude that the trial court did not abuse its discretion in denying Appellant's fifth request for a continuance, which was based upon nothing more than an unsupported allegation. Ap-

8. "The right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution.... [T]hese constitutional rights entitle an accused 'to choose at his own cost and expense any lawyer he may desire.'" *Commonwealth v. Prysock,* 972 A.2d 539, 542 (Pa.Super.2009) (quoting *Commonwealth v. McAleer,* 561 Pa. 129, 748 A.2d 670, 673 (2000)). "[H]owever ... the constitutional right to counsel of one's choice is not absolute." *Id.* (citing *Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665, 674 & n. 13 (1976)). It "must be exercised at a reasonable time and in a reasonable manner." *Commonwealth v. Thomas,* 879 A.2d 246, 261 (Pa.Super.2005) (citing *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102, 109 (1959)).

pellant's first claim fails.[9]

In his second claim, Appellant argues that the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose the results of a fingerprint analysis that was performed on the guns at issue in this case.[10] Specifically, Appellant contends that "[t]he Commonwealth's failure to disclose the fingerprint report was prejudicial error" because the report "could have been used by [Appellant] to argue that he never ... touched the weapons...." Brief for Appellant at 17–18. The Commonwealth concedes that the fingerprint report improperly was withheld, but challenges the report's exculpatory value. Brief for Commonwealth at 15–16.

In *Brady,* the United States Supreme Court held that "suppression by the prosecution of favorable evidence to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. *Brady's* mandate is not limited to purely exculpatory evidence; impeachment evidence also falls within *Brady's* parameters and, therefore, must be disclosed by prosecutors. *Commonwealth v. Haskins,* 60 A.3d 538, 546 (Pa.Super.2012) (citing *U.S. v. Bagley,* 473 U.S. 667, 677, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). As well, "the obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution." *Commonwealth v. Puksar,* 597 Pa. 240, 951 A.2d 267, 281 (2008).

To establish a *Brady* violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. *Id.* at 545; *see also Commonwealth v. Harris,* 884 A.2d 920, 932 (Pa.Super.2005). The burden rests with the defendant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." *Commonwealth v. Paddy,* 609 Pa. 272, 15 A.3d 431, 451 (2011).

To demonstrate prejudice, "the evidence suppressed must have been material to guilt or punishment." *Commonwealth v. Gibson,* 597 Pa. 402, 951 A.2d 1110, 1126 (2008). Evidence is material under *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the trial could have been different. *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." *Commonwealth v. McGill,* 574 Pa. 574, 832

---

**9.** Appellant contends that the trial court did not weigh Appellant's right to retain counsel against the Commonwealth's interest in the swift administration of justice. Brief for Appellant at 13; *see Prysock,* 972 A.2d at 542. However, the trial court conducted the required balancing test. *See* Notes of Testimony AM Session—Part I ("N.T. Part I"), 7/16/2012, at 3. Attorney Pisanchyn requested a continuance due to the brevity of his involvement in the case. *Id.* After the Commonwealth recited Appellant's lengthy pre-trial history, the trial court concluded: "This has been going on too long. Motion for continuance denied." *Id.* at 7.

**10.** Appellant styles his challenge of the trial court's refusal to grant a mistrial as a *Brady* violation. Brief for Appellant at 16. We confine our review of this claim to the issue of whether the Commonwealth improperly withheld exculpatory evidence during trial. *See Brady,* 373 U.S. at 87, 83 S.Ct. 1194.

A.2d 1014, 1019 (2003) (quoting *U.S. v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). The relevant inquiry is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555. Additionally, "[a] reviewing court is not to review the evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297, 309 (2011) (citing *Commonwealth v. Small*, 559 Pa. 423, 741 A.2d 666, 675–76 (1999)).

The fingerprint report in question improperly was withheld during the initial discovery period. In Appellant's June 25, 2012 motion for a continuance, Appellant specifically stated that he "need[ed] documentation from the District Attorney's Office that no fingerprints were found on the weapons." *See* Motion for Continuance, 6/25/2012, at 1 ¶ 5 (unpaginated). On June 26, 2012, First Assistant District Attorney Patrick Robinson sent a letter to Attorney Wilson stating: "[T]here is no indication in the Police Report that any attempt was made to 'lift fingerprints' from the firearms. I also today confirmed ... that no attempt has been made to 'lift fingerprints' from the firearms." Letter to Attorney Wilson, 6/26/2012, at 1 ¶ 1 (unpaginated). However, midway through Appellant's jury trial, the Commonwealth discovered that a fingerprint analysis had, in fact, been conducted on the two firearms in question: "[On the first day of trial] at 11:29 AM we received a FAX which is the report of the testing for fingerprints. There were no fingerprints on the shotgun, the rifle or the metal ammunition box." Notes of Testimony Afternoon Session ("N.T. Part III"), 7/16/2012, at 3. Although this omission appears to be the result of an inadver-

tent error on the part of the Pennsylvania State Police, see Notes of Testimony AM Session—Part 2 ("N.T. Part II"), 7/16/2012, at 3, the reason that the evidence was withheld is immaterial. *See Harris*, 884 A.2d at 932.

We turn now to the issue of the evidence's materiality pursuant to *Brady*. Appellant asserts that the exculpatory value of the fingerprint report is self-evident, arguing that "it can hardly be said that the absence of [Appellant's] fingerprints on the weapons was not exculpatory." Brief for Appellant at 17. The Commonwealth responds that the lack of any usable fingerprints on the weapons means the fingerprint report has no clear exculpatory value to Appellant. Brief for Commonwealth at 15–16. We believe the question to be more nuanced than the parties suggest. However, even assuming, *arguendo*, that the fingerprint report is exculpatory and favorable to Appellant, Appellant cannot establish that the report's late disclosure prejudiced the outcome of the trial.

This Court has found inconclusive fingerprint reports to be insufficient for the purposes of establishing prejudice pursuant to an alleged *Brady* violation. *See Harris*, 884 A.2d at 931–32 (concluding that a fingerprint report establishing that there were no usable prints on a murder weapon was not material under *Brady* even though the report first was provided to the defendant midway through trial). In *Harris*, we found dispositive the fact that the fingerprint "lifts" in question "did not have sufficient detail for any relevant analysis." *Id.* at 932. Based upon the anemic probative value of the evidence in *Harris*, we concluded that the fingerprint report could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (quoting *Commonwealth v. Causey*, 833 A.2d 165, 170 (Pa.Super.2003)).

■ The present case is analogous to *Harris*. Instantly, the fingerprint report in question clearly states that "[n]o identifiable fingerprints were developed on any of the items." Forensic Services Evidence Examination Report, 8/22/2011, at 1 (unpaginated). This evidence necessarily suffers from the same shortcomings as that discussed in *Harris*. In relevant scope, the evidence is identical: both are fingerprint analyses that indicate a lack of fingerprints on the items tested. An earlier revelation of the fingerprint report may have altered Appellant's defense strategy at trial. Nonetheless, evaluating the suppressed evidence in the context of the "entire record," see *Dennis*, 17 A.3d at 309, we cannot say that the contents of the report offered more than a "mere possibility" of affecting the outcome of the case.[11] *See McGill*, 832 A.2d at 1019. The evidence arrayed against Appellant at trial was such that the revelation of an inconclusive fingerprinting report, without more, would not have affected the jury's verdict. The Commonwealth adduced testimony and evidence that: (1) confirmed that the joyride in question actually occurred; (2) placed Appellant in the PT Cruiser on the night of July 21, 2011; and (3) established that Appellant had possessed a firearm on that night.[12] Consequently, we cannot conclude that the suppression of an inconclusive fingerprint report suffices to undermine overall confidence in the jury's verdict. *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555. The question of materiality is a close one. However, our previous holding in *Harris* leads us to conclude that the evidence in question was not material under *Brady*. Appellant's second claim fails.

■ We turn to Appellant's third claim, which challenges the trial court's admission of evidence related to the July 21, 2011 incident. Our standard of review is well-established:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super.2009) (quoting *Commonwealth v. Reid*, 571 Pa. 1, 811 A.2d 530, 550 (2002)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 1188–89 (citing *Commonwealth v. Carroll*, 936 A.2d

---

**11.** Appellant had multiple opportunities, prior to the report's revelation behind closed doors, to cross-examine several of the Commonwealth's law enforcement witnesses concerning the apparent lack of fingerprint evidence in this case. *See* N.T. Part I at 39, 53–55; N.T. Part II at 24, 27, 34. Once the existence of the report was brought to light, the Commonwealth did not seek to introduce the report to rebut Appellant's earlier cross-examination of witnesses on the putative lack of fingerprint evidence.

**12.** We fully describe the breadth and quality of the evidence presented by the Commonwealth during our discussion of Appellant's challenge to the admission of evidence. *See infra* at 17–18.

1148, 1152–53 (Pa.Super.2007)). "An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." *Id.* (quoting *Commonwealth v. Viera,* 442 Pa.Super. 348, 659 A.2d 1024, 1028 (1995)).

> The threshold inquiry with admission of evidence is whether the evidence is relevant. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Spiewak,* 533 Pa. 1, 617 A.2d 696, 699 (1992). In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155, 160 (1978).

*Commonwealth v. Stokes,* 78 A.3d 644 (Pa.Super.2013) (internal citations modified for uniformity); *see also* Pa.R.E. 401; 402; 403.

 Otherwise relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice. "The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence." *Commonwealth*

*v. Page,* 965 A.2d 1212, 1220 (Pa.Super.2009) (citing *Commonwealth v. Dillon,* 592 Pa. 351, 925 A.2d 131, 141 (2007) (citing Pa.R.E. 403)). "The comment to Pa. R.E. 403 instructs that: ' "Unfair prejudice" means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.' " *Id.* (quoting Pa. R.E. 403). However, "[e]vidence will not be prohibited merely because it is harmful to the defendant." *Dillon,* 925 A.2d at 141. "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Owens,* 929 A.2d 1187, 1191 (Pa.Super.2007) (citing *Commonwealth v. Broaster,* 863 A.2d 588, 592 (Pa.Super.2004)).

Appellant challenges the admission of the "evidence of an alleged four-man shooting spree which targeted [Pennsylvania Department of Transportation ("PennDOT")] signs and a home." [13] Brief for Appellant at 19. Although Appellant claims that this testimony was both irrelevant to the question of whether Appellant possessed a firearm and impermissibly prejudicial, his legal arguments solely address the issue of prejudice. *See* Brief for Appellant at 19–21. Consequently, we will confine our analysis to a discussion of prejudice. With that caveat in mind, the most complete statement of Appellant's third ar-

---

**13.** In its Rule 1925(a) opinion, the trial court addresses a different claim challenging the trial court's admission of evidence, to wit, the testimony of Roseanne Cardid. Appellant does not mention any claim related to Cardid in his principal brief before this Court, although Appellant does briefly discuss the issue in his reply brief. *See* Reply Brief for Appellant at 19–20. However, in Appellant's brief's statement of the questions, Appellant confines the scope of his claim to that evidence related to a "shooting spree." There is no mention of Cardid, whose testimony did

not involve the "spree" that took place on July 21, 2011. *See* N.T. Part II at 11–18. To the extent that Appellant relies upon a challenge to the admission of Cardid's testimony, that claim is waived for failure to include it in Appellant's statement of the questions or to argue it in his principal brief. *See* Pa.R.A.P. 2116(a); *Commonwealth v. Bryant,* 57 A.3d 191, 196 n. 7 (Pa.Super.2012); *see also Bishops, Inc. v. Penn Nat. Ins.,* 984 A.2d 982, 997–98 (Pa.Super.2009) (stating that an appellant may not utilize a reply brief to raise new issues on appeal).

gument is: "The admission of testimony other than that related to the possession of the firearms charge is prejudicial and prevented [Appellant] from a [*sic*] fair trial and undermines [his conviction]." *Id.* at 21. We disagree.

Essentially, Appellant objects to all of the evidence presented by the Commonwealth in relation to the "shooting spree" of July 21, 2011:

> The Commonwealth took great pains and planning to outline this course of events.... [The Commonwealth offered] testimony [relating to] the midnight rampage, bullet holes in a road-side home, the recovery of the bullet, damage to the road signs, discovery of two weapons and a parade of state troopers to the stand to verify the various chains of custody of evidence was far outside the testimony and evidence relevant and material to substantiate [a charge under 18 Pa.C.S. § 6105(a)(1) ] [*sic*].

Brief for Appellant at 19. In total, it appears that Appellant challenges the testimonies of at least fourteen Commonwealth witnesses, as well as various pieces of photographic and physical evidence. Notwithstanding this initially broad scope, the only evidence Appellant discusses with any specificity is the testimony of Andrew Murphy.[14] Brief for Appellant at 19–21.

 The instant appeal concerns Appellant's illegal possession of a firearm on the night of July 21, 2011. Consequently, the probative value of the testimony and physical evidence offered by the Commonwealth during trial was substantial because the evidence established the actual *corpus* of the crime. The testimony of two Cherry Ridge Township residents and an employee of PennDOT established that firearms were discharged from the vehicle in question and that the bullets damaged a home and signage in the area. *See* N.T. Part I at 9–14, 19–23; N.T. Part II at 5–11. The testimony of Reck, a passenger in the PT Cruiser that night, established that (1) Appellant was present in the vehicle; (2) Appellant was in possession of a sawed-off shotgun that night; (3) there was also an assault rifle in the vehicle; and (4) Appellant had discharged both firearms that night. *See* N.T. Part I at 23–32. Additionally, the Commonwealth offered the testimonies of ten employees of the Pennsylvania State Police to verify the discovery, and chains of custody, of various pieces of physical evidence, including the abandoned PT Cruiser, the two recovered firearms, and the bullet that damaged Andrew Murphy's home. A ballistics report establishing that the bullet was fired from the recovered assault rifle, and various photographs of the physical evidence also were admitted. *See* N.T. Part I at 16–19, 33–35, 43–56; N.T. Part II at 18–21, 25–27, 28–34; N.T. Part III at 5–14, 15–29.

 The probative value of this testimony and evidence offered by the Commonwealth outweighs any potential for prejudice. This evidence did not seek to inflame the jury's sensibilities with reference to matters "other than the legal propositions relevant to the case." *Owens*, 929 A.2d at 1191. Rather, the Commonwealth's evidence directly was aimed at

---

14. Andrew Murphy is the resident of a home situated at 87 Mill Brook Road (the *locus* of the instant case). In pertinent part, Andrew Murphy testified as follows: (1) he heard gunshots just before 5:00 a.m. on the night of July 21, 2011; (2) he also heard a car driving past with loud "young people" in it and "yelled out for them to knock it off"; (3) he heard further gunshots and additional cars within the span of approximately a half-hour; and (4) later in the morning he discovered that a bullet had struck his home. N.T. Part I at 9–14. Murphy also verified photographs presented by the Commonwealth as accurately depicting the bullet hole. *Id.*

describing the sequence of events on July 21, 2011, based upon which Appellant was accused of illegally possessing a firearm. Pennsylvania courts are not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 501 (1988). In sum, the Commonwealth's evidence did not invite the jury to convict on "an improper basis." *See* Pa.R.E. 403. Rather, it spoke directly to the subject matter of the instant case. That is, this evidence was necessary to establish that a firearm existed and that Appellant possessed it. Appellant offers no contrary citation to legal authority in his brief that persuades us that the Commonwealth's evidence was unduly prejudicial. Consequently, Appellant's third claim fails.

We turn now to Appellant's fourth claim: "Whether the [t]rial [c]ourt erred in its charge to the jury, erred in allowing replay of testimony, and was the subject verdict slip proper?" Brief for Appellant at 5. Although Appellant lists this question as a single issue, it actually involves three separate claims: (1) that the verdict slip given to the jury improperly listed a non-existent crime, to wit, "Felon Not to Possess [a] Firearm"; (2) that the trial court erred in its instructions to the jury; and (3) that the trial court erred in replaying Reck's testimony at the jury's request. Brief for Appellant at 22–24. Appellant asserts that these alleged errors require that his conviction be overturned. *Id.* at 24. We disagree.

 We begin with Appellant's claims related to the verdict slip. Instantly, the verdict slip listed the sole count under consideration as "Felon Not to Possess a Firearm." *See* Verdict, 7/17/2012, at 1 (unpaginated). Appellant actually was charged with a violation of 18 Pa.C.S. § 6105(a)(1), which refers to "persons" who are not to possess firearms, as opposed to "felons." [15] " 'The law is clear . . . that a court is without jurisdiction to convict a defendant of a crime for which he was not charged, and a challenge to a court's subject matter jurisdiction is not waivable.' " *Commonwealth v. Serrano*, 61 A.3d 279, 287 (Pa.Super.2013) (quoting *Commonwealth v. Knox*, 50 A.3d 749, 757 n. 12 (Pa.Super.2012)). Relying on *Commonwealth v. Dorm*, 971 A.2d 1284 (Pa.Super.2009), Appellant urges that the purported variation in his verdict slip means that Appellant was "convicted" of a crime that does not exist, and his conviction must be overturned. Brief for Appellant at 24. We disagree.

Our holding in *Dorm* is readily distinguishable from the present case. In *Dorm*, this Court reversed and remanded a defendant's conviction because the trial court issued a series of confusing jury instructions and an improper verdict slip, all of which made reference to a nonexistent statutory crime. *Dorm*, 971 A.2d at 1287 ("The last charge, [statutory involuntary deviate sexual intercourse], was the problem. Although there is no such crime, the verdict slip and the court's charge certainly seemed to tell the jury there was indeed such a crime."). The jury's confusion in *Dorm* arose because the trial court listed charges of both statutory and nonstatutory versions of involuntary deviate

---

**15.** Appellant's counsel objected to the verdict slip prior to the beginning of jury deliberations. Notes of Testimony Volume II ("N.T. Part IV"), 7/17/2012, at 6–7. Consequently, the issue properly has been preserved for our review. *See Commonwealth v. du Pont*, 730 A.2d 970, 984–85 (Pa.Super.1999).

sexual intercourse on the verdict slip; referred to both of these crimes as separate and distinct during its charge to the jury; and commingled the elements of involuntary deviate sexual intercourse with statutory sexual assault during jury instructions. *Id.* at 1287–88. Notwithstanding the fact that there is no crime of statutory involuntary deviate sexual intercourse, the jury eventually found the defendant in *Dorm* guilty of such a putative offense. Thereafter, the trial court was uncertain which of the crimes listed on the verdict slip the jury had intended to endorse. Thus, this Court remanded for a new trial to alleviate any confusion caused by the combination of the above-referenced factors.

Turning to the case at bar, the only error Appellant complains of in his brief with regard to the verdict slip is a bald allegation that the use of the word "felon" improperly confused the jury.[16] Our holding in *Dorm* relied upon the combination of several different factors, not merely an improperly listed verdict slip. *See Dorm,* 971 A.2d at 1288–89 ("[T]he confusing instructions and incorrect verdict slip left the court with an indecipherable result as to which offense Dorm was convicted of committing." (emphasis added)). While "the difficulties in [*Dorm* ] were aggravated by the verdict slip[,]" this Court did not, as Appellant suggests, remand exclusively for that undisputed deficiency. In fact, none of the *Dorm* factors apply to the instant case, beyond the error on the verdict slip. Appellant does not allege that

the trial court conflated the terms of subsection 6105(a)(1) with another crime, or that the trial court issued improper instructions relating to the elements of subsection 6105(a)(1). Therefore, Appellant's reliance upon *Dorm* is inapt.

■ Even assuming, *arguendo,* that a mislabeled charge on a verdict slip, without more, constituted grounds for reversal, as Appellant suggests, the error in this case was harmless. This Court has held that clerical errors on verdict slips are harmless where the error is based upon "technical" differences in meaning, as opposed to "substantive" ones. *See Commonwealth v. Dolny,* 235 Pa.Super. 241, 342 A.2d 399, 402 (1975) (holding that the use of the word "malfeasance" instead of "misfeasance" on a verdict slip was harmless error because the words are used interchangeably by Pennsylvania courts to describe the same conduct). There is certainly a distinction between the terms "person not to possess a firearm" and "felon not to possess a firearm." However, much as in *Dolny,* this Court has utilized the terms "felon not to possess a firearm" and "person not to possess a firearm" interchangeably to refer to identical conduct. *Compare Commonwealth v. Washington,* 63 A.3d 797, 799 (Pa.Super.2013) (referring to a violation of subsection 6105(a)(1) as felon not to possess a firearm) *with Commonwealth v. Jones,* 2 A.3d 650, 651 (Pa.Super.2010) (quoting *Commonwealth v. Jones,* 585 Pa. 687, 887 A.2d 1240 (2005) (*table* )) (referring to a violation of subsection 6105(a)(1) as **persons** not to possess

---

**16.** At trial, the Commonwealth presented evidence that Appellant twice was convicted of receiving stolen property, graded as a third-degree felony. *See* 18 Pa.C.S. §§ 3903(a.1), 3925(a). Respectively, Appellant was adjudicated delinquent as a juvenile on August 22, 2005, and also was convicted of the same crime as an adult on November 15, 2007. *See* N.T. Part II at 4–5; Commonwealth's Exhibit 11, 8/11/2011, at 3–5 (unpaginated); Commonwealth's Exhibit 12, 8/11/2011, at 4–5 (unpaginated). Black's Law Dictionary defines "felon" as "[a] person who has been convicted of a felony." Black's Law Dictionary 651 (8th ed. 2004). Therefore, Appellant undeniably was a "felon" at the time of his trial.

firearms). Therefore, the terms "felon not to possess a firearm" and "person not to possess a firearm" refer, interchangeably, to the Commonwealth's charge that, as a felon, Appellant illegally possessed a firearm. Consequently, no prejudice resulted from the trial court's utilization of the term "felon not to possess a firearm" on the verdict slip. Appellant's verdict slip claim fails.

■■■■ Next, Appellant claims that the trial court's instructions to the jury were improper. Our standard of review in assessing a trial court's jury instructions is as follows:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa.Super.2007) (quoting *Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa.Super.2007)). Appellant's claim related to the jury instructions amounts to nothing more than a recitation of isolated sections of the trial court's instructions and bald assertions that the instructions were not supported by the record and "obviously confused the jury." Brief for Appellant at 22. Appellant cites no legal authority to support these assertions, and develops no cogent argument. "[A]s Appellant has cited no legal authorities nor developed any meaningful analysis, we find this issue waived for lack of development."

*Commonwealth v. McLaurin*, 45 A.3d 1131, 1139 (Pa.Super.2012) (citing *Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915, 924 (2009)); *see also* Pa.R.A.P. 2119(a).

We now consider Appellant's claim that the "the [t]rial [c]ourt should not have allowed the jury to [re]hear the audio testimony of Cody Reck." Brief for Appellant at 22. Appellant's claim refers to the jury's post-deliberation request to rehear the testimony of Reck, which was granted by the trial court. *See* Notes of Testimony Volume II ("N.T. Part IV"), 7/17/2012, at 22. Specifically, Appellant contends that allowing the jury to listen to Reck's testimony for a second time "placed undue emphasis on Reck's words, prejudicing [Appellant]." Brief for Appellant at 23. We disagree.

■■■■ In reviewing Appellant's claim, we keep the following legal principles in mind regarding jury requests to replay portions of testimony:

> [W]here a jury, in order to refresh their recollection, requests a reading of a portion of the testimony actually given at the trial, it is a matter within the discretion of the trial court whether to grant such request. If the trial court does grant the request, the review of testimony must be conducted in open court in the presence of parties and their counsel and, if the resultant review does not place undue emphasis on one witness' testimony, no reversible error is committed.

*Commonwealth v. Peterman*, 430 Pa. 627, 244 A.2d 723, 726 (1968). Reversible error may occur when the trial court sends the testimony of a particular witness to the jury room, instead of holding such a review in open court. *See Commonwealth v. Ware*, 137 Pa. 465, 20 A. 806, 808 (1890) ("The sending out of a part of the testimo-

ny to the jury room ... would have been a palpable error."); Pa.R.Crim.P. 646(C)(1). "The reason for the prohibition is that the presence in the jury room of the physical embodiment of a portion of the trial testimony in written form may have the effect of increasing the probability that the jury will accept the testimony as credible." *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572, 575 (1973). However, we emphasize that this Court has stated that such error may also be harmless, and does not constitute prejudice *per se. See Commonwealth v. Williams*, 959 A.2d 1272, 1285–86 (Pa.Super.2008). "[T]his inquiry requires us to determine whether providing the [evidence] to the jury was prejudicial: 'If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.'" *Williams*, 959 A.2d at 1285–86 (quoting *Commonwealth v. Dupre*, 866 A.2d 1089, 1103 (Pa.Super.2005)).

▮ The trial court permissibly replayed Reck's testimony (apparently, both direct and cross examination) in open court. *See* N.T. Part IV at 22 ("JURY TRIAL RECONVENED WITH QUESTION BY THE JURY AT 12:08 P.M., PLAYBACK OF WITNESS, EXAMINATION OF CODY RECK") (capitalization in original). Consequently, the trial court adhered to the procedural requirements of Pennsylvania case law and Pa.R.Crim.P. 646(C)(1). However, our inquiry does not end there. We also must determine whether the trial court abused its discretion in allowing Reck's testimony to be replayed.

Appellant does not present a well-developed argument regarding prejudice; he simply asserts that the jury "should" have been prevented from hearing the testimony of Reck again. Appellant offers no citations to any arguably prejudicial sections of Reck's testimony, nor any cogent argument explaining the contours of the alleged prejudice. The only potentially persuasive citation offered by Appellant is to *Williams*. However, Appellant's reliance upon *Williams* is unavailing. The evidence provided to the jury in *Williams* was sent into the jury room, in an ultimately harmless violation of Pa.R.Crim.P. 602(A). *See Williams*, 959 A.2d at 1283. Here, Appellant does not claim that Reck's testimony improperly was provided to the jury in contravention of any procedural rule.

Even assuming, *arguendo*, that the trial court's treatment of Reck's had violated the Pennsylvania Rules of Criminal Procedure, we are persuaded by our analysis in *Williams* that Appellant's claim, without more development, does not suffice to establish prejudice. In *Williams*, we reasoned that merely replaying an audio recording of prior testimony to a jury was not, by itself, prejudicial:

> The jury did not hear new or different testimony in private, out of the presence of [appellant]. Instead, the jury merely heard a verbatim recording of exactly what transpired in open court.... Moreover, in addition to hearing ... direct testimony again, the jury also heard again ... cross-examination by [appellant's] trial counsel. As such, the jury did not hear any accusations or testimony that did not take place in open court—and [appellant] was not accused of anything in secret.

*Williams*, 959 A.2d at 1283. Under this reasoning, the mere replay here of Reck's previous testimony in open court falls within the ambit of the trial court's discretion and was not prejudicial. Appellant has made no cogent argument that leads us to conclude otherwise. Consequently, the trial court did not abuse its discretion.

Appellant's claim challenging the replay of testimony to the jury fails.

We turn now to Appellant's fifth issue, which challenges both the sufficiency and the weight of the evidence. We begin with Appellant's challenge to the sufficiency of the evidence. A claim impugning the sufficiency of the evidence presents us with a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). Our standard of review is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa.Super.2011) (citing *Common-*

*wealth v. Brooks*, 7 A.3d 852, 856–57 (Pa.Super.2010)). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." (*Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 185 (1993)). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.'" *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa.Super.2010) (quoting *Commonwealth v. Badman*, 398 Pa.Super. 315, 580 A.2d 1367, 1372 (1990)).

Appellant claims that the evidence adduced by the Commonwealth at trial was insufficient to find him guilty of the following offense:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\* \* \*

**(b) Enumerated offenses.**—The following offenses shall apply to subsection (a):

\* \* \*

Section 3925 (relating to receiving stolen property) upon conviction of the second felony offense.

18 Pa.C.S. § 6105. Appellant's argument addressing his challenge to the sufficiency

of the evidence is somewhat confusing. At various points, Appellant conflates the standards for sufficiency challenges with those for weight of evidence, attempting to discuss both issues simultaneously. We discern that Appellant challenges the sufficiency of the evidence to establish the element of possession of a firearm. *See* Brief for Appellant at 27. Possession of a firearm clearly is an essential element of the statute at issue in this particular case. *See* 18 Pa.C.S. § 6105(a)(1). Specifically, Appellant argues that the Commonwealth failed to establish that he actually possessed a firearm on July 21, 2011. "At best, the Commonwealth has attempted to prove that [Appellant] was in a vehicle with Cody Reck and two other individuals named Harper and Burton." [17] Brief for Appellant at 27. We disagree.

In relevant part, we already have reviewed the breadth of the evidence presented by the Commonwealth at trial in our discussion of Appellant's challenge to the admission of evidence. *See supra* at 751. Specifically, Reck's testimony established that Appellant had possessed firearms on the night in question. *See* N.T. Part I at 23–32. In response, Appellant called both Harper and Burton to the stand to refute Reck's testimony. Both men testified that Appellant was not with them in the PT Cruiser on the night in question, and that Appellant did not possess a firearm. N.T. Part III at 33–34, 44–45. However, as the Commonwealth adduced during cross-examination, Harper and Burton's exculpatory claims directly contradicted earlier statements both men made while being questioned by the Pennsylvania State Police and appearing before the court of common pleas. *Id.* at 36, 46–48. In those prior statements, both men had attested that Appellant was present and participated in discharging the firearms on July 21, 2011. *Id.*

This evidence clearly was sufficient to establish that Appellant possessed a firearm on the morning of July 21, 2011. The testimony of Reck, alone, established that Appellant possessed a firearm on July 21, 2011. *See* N.T. Part III at 25–26 ("[Appellant] had a sawed-off shotgun in his hand.... All of us shot the firearms."). As noted, "the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Estepp*, 17 A.3d at 943–44. The jury was free to reach its own conclusions regarding the credibility of the testimonies of Reck, Harper, and Burton. The verdict indicates that the jury found Reck's testimony credible, while finding Harper and Burton's testimony incredible. Precedent forbids us from substituting our judgment of facts for that of the fact-finder. *Id.* Therefore, Appellant's claim challenging the sufficiency of the evidence fails.[18]

We turn now to Appellant's claim challenging the weight of the evi-

---

**17.** Appellant refers to William Christopher Harper and Gary Stephen Burton II, respectively. *See* N.T. Part III at 32–51. At the time of trial, both men were incarcerated based upon convictions stemming from the same July 21, 2011 incident at issue in this case.

**18.** Appellant also challenges the sufficiency of the evidence to establish another element of the crime, namely conviction of an enumerated offense listed under subsection 6105(b). 18 Pa.C.S. § 6105(a)(1). However, Appellant's discussion of this issue is confined to a single sentence. *See* Brief for Appellant at 26. Thus, the argument has been waived for failure adequately to develop a supporting argument. *McLaurin*, 45 A.3d at 1139. As well, the record indicates that the Commonwealth proffered evidence of Appellant's prior convictions. *See supra* at 753 n. 16.

dence. Our review is guided by the following legal principles:[19]

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Widmer*, 744 A.2d at 751–52; *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence[.]

*Widmer*, 744 A.2d at 753 (internal citations truncated for continuity, emphasis added).

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa.2013) (citations modified).

As set forth at length above, the evidence established that Appellant participated in the July 21, 2011 joyride with Harper, Burton, and Reck. *See supra* at 751–52. The evidence also demonstrated that Appellant possessed a firearm on the night in question. Moreover, the Commonwealth produced evidence that Appellant twice had been convicted of crime listed under subsection 6105(b). This evidence established the necessary elements of the underlying crime. *See* 18 Pa.C.S. § 6105(a)(1).

Although Appellant correctly recites the legal standards that apply to a challenge to the weight of evidence, his discussion of the issue amounts to conclusory assertions without any legal or logical support. Appellant does not discuss any specific evidence in his case. Nothing in Appellant's argument, or in our review of the evidence, suggests that the jury's verdict should have shocked the trial court's sense of justice. Thus, the trial court did not abuse its discretion in ruling that Appellant had

---

19. To properly be preserved, a weight of the evidence claim must be raised in a motion prior to sentencing, in an oral motion at sentencing, or a post-sentence motion. *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa.Super.2013). Appellant preserved his claim in his post-sentence motion. *See* Appellant's Motion for Post–Sentence Relief, 9/7/2012, at 5.

failed to establish the sort of injustice that would require a new trial. Consequently, Appellant's challenge to the weight of the evidence must fail.

▮ Finally, we turn to Appellant's challenge to the discretionary aspects of his sentence. "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Austin*, 66 A.3d 798, 807–08 (Pa.Super.2013).

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [see Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements we will then proceed to decide the substantive merits of the case.

*Id.* (brackets in original).

Instantly, Appellant filed a timely notice of appeal, *see* Appellant's Notice of Appeal, 10/10/2012, at 1, and preserved his claim that his sentence was excessive in a post-sentence motion. *See* Appellant's Motion for Post–Sentence Relief, 9/7/2012, at 7–8. Appellant does not include a proper Rule 2119(f) statement in his brief, although he has relabeled that section of his argument addressing his sentencing challenge in an apparent attempt to comply. Brief for Appellant at 30. Despite the fact that Appellant has failed to comply with Rule 2119(f), the Commonwealth does not object to the statement's absence. Therefore, we will not find waiver. *See Com-*

*monwealth v. Brougher*, 978 A.2d 373, 375 (Pa.Super.2009) (citing *Commonwealth v. Foster*, 960 A.2d 160, 163 (Pa.Super.2008)) ("[C]laims relating to the discretionary aspects of a sentence are waived if an appellant does not include a Pa.R.A.P. 2119(f) statement in his brief and the opposing party objects to the statement's absence."). Consequently, we will determine whether Appellant has presented a substantial question that his sentence is inappropriate under the Sentencing Code. *See Austin*, 66 A.3d at 808.

▮ The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Id.* "A substantial question exi[s]ts only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citing *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super.2013)).

The clearest statement of Appellant's challenge to the discretionary aspects of his sentence is as follows: "The sentencing court erred and abused its discretion by imposing a sentence far in excess of the standard guidelines without stating valid reasons for such a significant departure." Brief for Appellant at 30. This Court has held that claims that the sentencing court imposed a sentence outside the standard guidelines without stating adequate reasons on the record presents a substantial question. *See Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa.Super.2007) (citing *Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa.Super.2000)). We will begin by determining whether any of Appellant's sentences fall outside of the standard guideline ranges.

■ The record indicates that Appellant was sentenced for violations of 18 Pa.C.S. §§ 2705, 3304(b), and 6105(a)(1). *See* Appellant's Guideline Sentence Form, 8/14/2012, at 1–3 (unpaginated). The standard sentencing guidelines for those crimes were six to twelve months' incarceration under section 2705, six to ten months' incarceration under subsection 3304(b), and forty-two to fifty-four months' incarceration under subsection 6105(a)(1). *Id.* Therefore, Appellant's aggregate standard sentencing range was fifty-four to seventy-six months. Ultimately, Appellant was sentenced to twelve to twenty-four months' under section 2705, six to twenty-four months' under subsection 3304(b), and fifty-four to one hundred and eight months' under subsection 6105(a)(1). *See* Notes of Testimony Volume I ("N.T. Part V"), 8/9/2012, at 7–8. Of these offenses, only the trial court's sentence pursuant to subsection 2705 falls outside of the standard guidelines. *Id.* Therefore, we conclude that Appellant has presented a substantial question only with regard to his sentence under subsection 2705. *See Robinson, supra.*[20]

■ Our standard of review of a challenge to the discretionary aspects of sentence is well-settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised

its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Robinson,* 931 A.2d at 26. "In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, 620–21 (2002); *see* 42 Pa.C.S. § 9721(b). The sentencing guidelines are not mandatory, and sentencing courts retain "broad discretion in sentencing matters, and therefore, may sentence defendants outside the [g]uidelines." *Id.* (citing *Commonwealth v. Ellis,* 700 A.2d 948, 958 (Pa.Super.1997)). "In every case where the court imposes a sentence ... outside the guidelines adopted by the Pennsylvania Commission on Sentencing ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S. § 9721(b). However, "[t]his requirement is satisfied 'when the judge states his reasons for the sentence on the record and in the defendant's presence.'" *Commonwealth v. Widmer,* 446 Pa.Super. 408, 667 A.2d 215, 223 (1995), *reversed on other grounds,* 547 Pa. 137, 689 A.2d 211 (1997). Consequently, all that a trial court must do to comply with the above procedural requirements is to state adequate reasons for the imposition of sentence on the record in open court. *See Robinson,* 931 A.2d at 26 (quoting *Commonwealth v. Walls,* 846 A.2d 152, 158 (Pa.Super.2004), *reversed on other grounds,* 592 Pa. 557, 926 A.2d 957 (2007)) ("If a court chooses to sentence a defendant outside of the sentencing guidelines,

---

**20.** Appellant fails to present a substantial question with regard to his sentence under subsections 3304(b) and 6105(a)(1). *See Commonwealth v. Moury,* 992 A.2d 162, 171 (Pa.Super.2010) (citing *Commonwealth v.*

*Cruz–Centeno,* 447 Pa.Super. 98, 668 A.2d 536, 545 (1995)) ("[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.").

it should state on the record adequate reasons for the deviation.").

■■■■ "When imposing sentence, a court is required to consider 'the particular circumstances of the offense and the character of the defendant.'" *Commonwealth v. McClendon*, 403 Pa.Super. 467, 589 A.2d 706, 712–13 (1991) (*en banc*) (quoting *Commonwealth v. Frazier*, 347 Pa.Super. 64, 500 A.2d 158, 159 (1985)). "In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Id.* "Where pre-sentence reports exist, we shall ... presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12, 18 (1988).

■■■■ The trial court's explanation of its sentence is relatively brief. *See* N.T. Part V at 6. However, during its exchange with Appellant, the sentencing court made reference to: (1) Appellant's substantial juvenile and adult criminal history; (2) Appellant's "criminal mind set" and his resistance to "treatment"; (3) Appellant's proclivity for recidivism; and (4) the immature yet serious nature of Appellant's crime, which involved what the sentencing court referred to as a "firing spree." *Id.* While brief, these ruminations conform substantially with the requirements of *McClendon*. The trial court specifically referenced Appellant's prior criminal record, his age, his personal characteristics, and (what the trial court obviously felt was) his lack of potential for rehabilitation. Furthermore, the sentencing court ordered a pre-sentencing report. Therefore, we presume that the sentencing judge fully was apprised of Appellant's characteristics and properly weighed those factors. *See Devers*, 546 A.2d at 18. "Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed." *Id.*

We are persuaded that the sentencing court stated adequate reasons on the record to support the imposition of a sentence outside of the standard guidelines. "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b).... [T]he record as a whole must reflect due consideration by the court of the statutory considerations." *Commonwealth v. Coulverson*, 34 A.3d 135, 145–46 (Pa.Super.2011) (citing *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa.Super.2008)). Examining the record as a whole, the sentencing court adequately informed Appellant of the reasons that it exceeded the standard sentencing guidelines. To wit, the sentencing court referenced Appellant's criminal history, his risk for recidivism, and the seriousness of his crime. As such, the sentencing court did not abuse its discretion in sentencing Appellant outside of the standard range under subsection 2705. Appellant's challenge to the discretionary aspects of his sentence fails.

Judgment of sentence affirmed.