J-S55005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BENDERICK STERNS, | |
| Appellant | No. 1688 EDA 2013 |

Appeal from the Judgment of Sentence April 22, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006419-2012

BEFORE:  BOWES, SHOGAN, and OTT, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 15, 2014**

Benderick Sterns appeals from the judgment of sentence of life imprisonment that the trial court imposed after he was convicted of first-degree murder, conspiracy, possession of an unlicensed firearm, possession of a firearm on public property in Philadelphia, and possession of an instrument of crime.  We reject his position that the convictions were against the weight of the evidence and affirm.

Appellant and his co-defendant, Kahhim Odom, were convicted based upon the testimony of three eyewitnesses to the November 27, 2011 shooting death of Rymeek Horton.  Additionally, Appellant admitted to killing the victim to another Commonwealth witness.  The trial court aptly delineated the evidence adduced at trial:

On November 27, 2011, the night Rymeek Horton ("the decedent") was killed, he, Amir Jones ("Amir"), Amir's brother Omar Jones ("Omar"), and Ramil Andrews were hanging out, smoking marijuana in front of Amir's and Omar's grandmother's house on Malcom Street, a few houses down from Frazier Street in Philadelphia. Amir testified that they shared one bag of marijuana, and then Omar and the decedent decided to go down Frazier Street, in the direction away from Whitby Avenue, to get some more. The decedent turned back and began to walk back toward his aunt and uncle's house on Malcom Street to tell his uncle to leave the door unlocked.

Two men then started running down Frazier Street, from the direction of Whitby Avenue, firing guns at the decedent. One of them was wearing a gray hoodie, the other had on a dark hoodie. Amir and Omar both identified the man in the gray hoodie as [Appellant] and the man in the dark hoodie as the defendant's co-defendant, Kahhim "Killa" Odom ("Odom"). [Appellant's] gun jammed, but he cleared the jam and continued shooting. Omar ran, heard the decedent scream "Ouch," turned around, and saw the decedent lying on the ground.

When the first shots rang out, Vance Bradley ("Bradley") was in his house at 5628 Malcom Street. Bradley heard four shots and then a pause, and then he went to look out his door. The decedent was lying just in front of his house, about three feet from the sidewalk, in the street. Bradley testified that he saw [Appellant] and Odom walk toward the decedent— [Appellant] was wearing a gray hoodie, and Odom was wearing a dark-colored hoodie, but Bradley could see both their faces. [Appellant] stood over the decedent, Odom just a few feet behind him, and fired four more shots at the decedent's head. Bradley then saw both the defendant and Odom run back up Frazier Street toward Whitby Avenue.

. . . .

Two days later, Stephon "Buddha" Brandon ("Brandon") was at Paula Sharp's house with her and Odom. When Brandon first arrived, Odom handed him a cell phone. [Appellant] was on the phone, and he asked Brandon what happened to the decedent. Brandon told the defendant he did not know, and [Appellant] responded by saying: "That's my work." N.T. 4/10/2013 at 153. Brandon said, "Dag, I liked Rymeek. He was

- 2 -

a cool person. Why you do that? Now his family is gonna think that . . . I did it because we went through something in the past." [*Id*.]. [Appellant] responded that "it was over some money." [*Id*.] Brandon told [Appellant] that, "Everything is gonna come to the light." [*Id*.] Odom then jumped up, grabbed a pistol, called Brandon a [profane racial slur] and left the house.

Trial Court Opinion, 11/21/13, at 2-4 (footnotes and extraneous citations to record omitted). The Commonwealth established that the victim died from multiple gunshot wounds, including three to the head. Appellant countered this proof by presenting two alibi witnesses with whom he purportedly was playing cards.

This appeal followed imposition of judgment of sentence and denial of Appellant's post-sentence motion, which contained a claim that the verdict was against the weight of the evidence. Appellant raises a single claim on appeal: "Whether the Guilty Verdict Against The Appellant Was Against The Weight Of The Evidence." Appellant's brief at 4. Our standard of review in this context is extremely limited and well-ensconced:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *[Commonwealth v.] Widmer*, 744 A.2d [745,] 751–52 [Pa. 2000]; *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 320, 744 A.2d at 752. It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is

imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Widmer*, 744 A.2d at 753.

*Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa.Super. 2014) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013)).

Herein, we have reviewed Appellant's allegations and conclude that the trial court did not abuse its discretion in denying Appellant's weight claim and we affirm on the basis of its November 21, 2013 opinion. We also observe that the jury was free to credit testimony linking Appellant to the crime and to reject his alibi witnesses' testimony. *Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) ("A determination of credibility lies solely within the province of the factfinder."); *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa.Super. 2006) ("The weight of the

evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. . . . It is not for this Court to overturn the credibility determinations of the fact-finder.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2014

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH                    :
                                        CP-51-CR-0006419-2012
                                :
        v.                              Superior Court Docket No.
                                :       1688 EDA 2013
Benderick Sterns

                                :

Sarmina, J.                     :       FILED
November 21, 2013

                                        NOV 2 1 2013

                                        Criminal Appeals Unit
                OPINION                 First Judicial District of PA

## PROCEDURAL HISTORY

On April 18, 2013, following a jury trial before this Court, Benderick "Ben" Sterns ("the

defendant") was found guilty of murder of the first degree (H-1), criminal conspiracy (H-1), carrying

a firearm without a license (F-3), carrying a firearm on public streets (M-1), possessing an instrument

of crime ("PIC") (M-1), and recklessly endangering another person[1] (M-2). Sentencing was deferred

until April 22, 2013. On that date, this Court granted a motion for *nolle prosequi* for the charge of

recklessly endangering another person and sentenced the defendant to the mandatory term of life

imprisonment for murder of the first degree[2] and to no less than twenty-two years and no more than

forty-four years incarceration[3] on the remaining charges, to be served consecutively. On May 2,

2013, the defendant filed post-sentence motions, which this Court denied on May 13, 2013. On

June 11, 2013, the defendant filed this timely appeal.

---

[1] 18 Pa.C.S. § 2502(a), 18 Pa.C.S. § 903, 18 Pa.C.S. § 6106(a), 18 Pa.C.S. § 6108, 18 Pa.C.S. § 907, and 18 Pa.C.S. § 2705, respectively.

[2] 18 Pa.C.S. § 1102(a)(1).

[3] The defendant was sentenced to: a minimum of twenty and a maximum of forty years confinement for conspiracy to commit first degree murder; a minimum of two and a maximum of four years confinement for carrying a firearm without a license; a minimum of one and a maximum of four years confinement for carrying a firearm on public streets; and a minimum of one and a maximum of four years confinement for possessing an instrument of a crime.


A1

FACTS

On November 27, 2011, the night Rymeek Horton ("the decedent") was killed, N.T. 4/9/2013 at 108, he, Amir Jones ("Amir"), Amir's brother Omar Jones ("Omar"), and Ramil Andrews were hanging out, smoking marijuana in front of Amir's and Omar's grandmother's house on Malcom Street, a few houses down from Frazier Street in Philadelphia. N.T. 4/10/2013 at 207- 08. Amir testified that they shared one bag of marijuana, and then Omar and the decedent decided to go down Frazier Street, in the direction away from Whitby Avenue, to get some more. N.T. 4/10/2013 at 209-10. The decedent turned back and began to walk back toward his aunt and uncle's house on Malcom Street to tell his uncle to leave the door unlocked. N.T. 4/12/2013 at 86- 87.

Two men then started running down Frazier Street, from the direction of Whitby Avenue, firing guns at the decedent. N.T. 4/10/2013 at 213-14. One of them was wearing a gray hoodie, the other had on a dark hoodie. N.T. 4/10/2013 at 216. Amir and Omar both identified the man in the gray hoodie as the defendant and the man in the dark hoodie as the defendant's co-defendant, Kahhim "Killa" Odom ("Odom").[4] N.T. 4/10/2013 at 279; N.T. 4/12/2013 at 115. The defendant's gun jammed, but he cleared the jam[5] and continued shooting. N.T. 4/10/2013 at 216. Omar ran, heard the decedent scream "Ouch," turned around, and saw the decedent lying on the ground. N.T. 4/12/2013 at 88.

When the first shots rang out, Vance Bradley ("Bradley") was in his house at 5628 Malcom Street. N.T. 4/9/2013 at 157-58. Bradley heard four shots and then a pause, and then he went to

---

[4] The identifications of the defendant and Odom made by Amir and Omar were presented via signed statements they gave to police on December 22, 2011 and December 21, 2011, respectively. Those statements were admitted pursuant to Pa.R.E. 803.1 and Commonwealth v. Brady, 507 A.2d 66, 67 (Pa. 1986), Commonwealth v. Lively, 610 A.2d 7, 8 (Pa. 1992), and their progeny.

[5] Amir and Omar both heard the gun click, N.T. 4/10/2013 at 215, N.T. 4/12/2013 at 87, and Amir saw the defendant cocking the barrel of the gun back. N.T. 4/10/2013 at 215-16. Philadelphia Police Officer Jesus Cruz testified that cocking the barrel of the gun is the most common way to clear a jammed gun, that when the gun is cleared, a live round is expelled from the gun, and that a live round was found at the scene. N.T. 4/12/2013 at 208, 217.

2



look out his door. N.T. 4/9/2013 at 158-59. The decedent was lying just in front of his house, about three feet from the sidewalk, in the street. N.T. 4/9/2013 at 159. Bradley testified that he saw the defendant and Odom walk toward the decedent – the defendant was wearing a gray hoodie, and Odom was wearing a dark-colored hoodie, but Bradley could see both their faces. N.T. 4/9/2013 at 159-60, 165-66, 169. The defendant stood over the decedent, Odom just a few feet behind him, and fired four more shots at the decedent's head.[6] N.T. 4/9/2013 at 160-61. Bradley then saw both the defendant and Odom run back up Frazier Street toward Whitby Avenue. N.T. 4/9/2013 at 164.

Prior to the shots being fired, Jeffrey Taylor ("Taylor") arrived at home and parked his car between Malcom Street and Whitby Avenue on Frazier Street. N.T. 4/10/2013 at 62, 64. As he walked down Frazier Street and then down Whitby Avenue, he saw two men get out of a white Chevrolet Impala parked on Whitby Avenue near Frazier Street. N.T. 4/10/2013 at 65-66. One wore a gray hoodie, the other wore a dark hoodie. N.T. 4/10/2013 at 68. The two men walked toward the intersection of Malcom and Frazier Streets. N.T. 4/10/2013 at 66. Taylor continued walking home, but then heard gunshots from the direction of that intersection. N.T. 4/10/2013 at 69. He looked back toward the sound of the gunshots and saw the same two men running back, guns in hand, and getting back in the car. N.T. 4/10/2013 at 70. The car drove off. N.T. 4/10/2013 at 70.

Two days later, Stephon "Buddha" Brandon ("Brandon") was at Paula Sharp's house with her and Odom.[7] N.T. 4/10/2013 at 153. When Brandon first arrived, Odom handed him a cell phone. N.T. 4/10/2013 at 153. The defendant was on the phone, and he asked Brandon what

---

[6] Dr. Gary Collins testified that the decedent's cause of death was multiple gunshot wounds, including one to the upper buttocks, one to the neck and three to the head. N.T. 4/9/2013 at 113, 119, 121-22.

[7] Much of Brandon's testimony was presented via a signed statement he gave to police on January 5, 2012. That statement was admitted pursuant to Pa.R.E. 803.1 and Brady, 507 A.2d at 67, Lively, 610 A.2d at 8, and their progeny.

3



happened to the decedent. N.T. 4/10/2013 at 153. Brandon told the defendant he did not know, and the defendant responded by saying: "That's my work." N.T. 4/10/2013 at 153. Brandon said, "Dag, I liked Rymeek. He was a cool person. Why you do that? Now his family is gonna think that I – think I did it because we went through something in the past." N.T. 4/10/2013 at 153. The defendant responded that "it was over some money." N.T. 4/10/2013 at 153. Brandon told the defendant that, "Everything is gonna come to the light." N.T. 4/10/2013 at 153. Odom then jumped up, grabbed a pistol, called Brandon a "bitch-ass nigga" and left the house. N.T. 4/10/2013 at 153.

Detective James Burke arrested the defendant on March 30, 2012. N.T. 4/15/2013 at 58.

## LEGAL DISCUSSION

In his Concise Statement of Matter Complained of on Appeal Under Rule 1925(b) ("1925(b) Statement"), the defendant raises the following issues on appeal:

1. The Commonwealth failed to present evidence sufficient to sustain the verdict.

2. The verdict was against the weight of the evidence.

### 1. The Commonwealth Failed to Present Evidence Sufficient to Sustain the Verdict

In order to preserve claims of insufficiency of the evidence for appeal, the defendant must, in his 1925(b) Statement, "specify the element or elements upon which the evidence was insufficient." Commonwealth v. Gibbs, 981 A.2d 274, 281 (Pa.Super. 2009), *quoting* Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa.Super. 2008). The purpose of Pa.R.A.P. 1925 is to allow the trial court to prepare a meaningful opinion on the issues the defendant is raising on appeal. Commonwealth v. Seibert, 799 A.2d 54, 62 (Pa. Super. 2002).

> When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

4

Id. (internal quotation marks omitted) (citations omitted), *quoting* Commonwealth v. Dowling, 778 A.2d 683, 686 (Pa.Super. 2001); In re Estate of Daubert, 757 A.2d 962, 963 (Pa.Super. 2000). Specificity is particularly important in cases where, as here, the defendant has been charged with and convicted of numerous offenses, each of which contained numerous elements that the Commonwealth had a burden to prove beyond a reasonable doubt. Gibbs, 981 A.2d at 281. In fact, a discussion of sufficiency is "of no moment" where the 1925(b) Statement fails to specify which elements were not supported by sufficient evidence. Id.

Here, in his 1925(b) Statement, the defendant states merely that "the evidence was insufficient to sustain the verdict." He then goes on to list a number of facts that were presented at trial. At its core, these facts challenge the evidence regarding identification of the decedent's killers. For example, it notes, among other things, that some of the Commonwealth's identification witnesses had *crimen falsi*, that Brandon testified he regularly smoked PCP, that various witness descriptions conflicted in various ways with characteristics of the defendant, that it was dark the night of the murder and that the incident was short, that particular pieces of physical evidence were not recovered, and that the defense presented alibi evidence. It does not, however, specify which convictions are challenged, let alone which elements. Thus, any claim challenging the sufficiency of the evidence as to any particular element is waived.

To the extent the defendant did preserve a challenge as to sufficiency of identification evidence, that claim fails — the Commonwealth established identity beyond a reasonable doubt.[8]

> The standard [applied] in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above test], we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we

---

[8] The defendant has argued that there was insufficient evidence to sustain his convictions, yet also argues that the verdict was against the weight of evidence. Having argued that the verdict was contrary to the weight of the evidence, defendant concedes that there was sufficient evidence to sustain the verdict. See Commonwealth v. Manchas, 633 A.2d 618, 622 (Pa.Super. 1993). Nevertheless, both claims fail.

5



> note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

Commonwealth v. Ventura, 975 A.2d 1128, 1142 (Pa.Super. 2009), *citing* Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa.Super. 2007). Prior inconsistent statements which satisfy the strictures of Pa.R.E. 803.1 must be viewed by a reviewing court in the same fashion as any other type of "validly admitted evidence" when determining whether the evidence presented at trial was sufficient to sustain a conviction. Commonwealth v. Brown, 52 A.3d 1139, 1171 (Pa. 2012). Here, Bradley, Omar, and Amir all identified the defendant and Odom as the two men who killed the decedent, and the defendant later confessed to Brandon that the killing was "my work." Viewing the evidence in the light most favorable to the Commonwealth, this evidence is sufficient to establish that the defendant was one of the men who participated in the killing of the decedent.

2. The Verdict Was Against the Weight of the Evidence

Like a claim that evidence was insufficient to support the verdict, a claim that the verdict was against the weight of the evidence must be specifically claimed in the defendant's 1925(b) Statement. Seibert, 799 A.2d at 62. In Seibert, the defendant waived his weight claim where his 1925(b) Statement "merely stated that '[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges.'" Id. Here, the defendant's 1925(b) Statement states that "the verdict was against the weight of the evidence." It then goes on to list numerous facts presented at trial. At no point does the defendant specify in the 1925(b) Statement how these facts support a claim that the verdict was against the weight of the evidence. The claim is therefore waived.

6



However, to the extent the defendant has successfully preserved a claim that the verdict was against the weight of the evidence because the identification of the defendant as the doer was not credible in light of the evidence, his claim still fails.

"One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." Commonwealth v. Widmer, 744 A.2d 745, 753 (Pa. 2000). This challenge "concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." Commonwealth v. Manchas, 633 A.2d 618, 622 (Pa.Super. 1993), *quoting* Commonwealth v. Taylor, 471 A.2d 1228, 1230 (Pa.Super. 1984). The trial court should

> grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is *so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.*

Commonwealth v. Brown, 648 A.2d 1177, 1189 (Pa. 1994) (emphasis in original). A jury's verdict creates such shock in one's sense of justice when the evidence is "tenuous, vague and uncertain." Commonwealth v. Edwards, 582 A.2d 1078, 1083 (Pa.Super. 1990). Trial courts have wide and almost supreme discretion in determining whether a verdict is against the weight of the evidence and shocks one's sense of justice because "the trial judge has had the opportunity to hear and see the evidence presented." Widmer, 744 A.2d at 753.

In his 1925(b) Statement, the defendant appears to argue that evidence regarding the identity of the decedent's killers was lacking and that what evidence was presented was either conflicting or not credible. The defendant especially focuses on a lack of physical evidence tying him to the crime, on evidence challenging the Commonwealth's witnesses' credibility due to the presence of *crimen falsi* and the circumstances surrounding the Commonwealth's witnesses' opportunity to observe the

7

**A7**

doers, and on the defense's presentation of an alibi witness. However, Bradley, Omar, and Amir all identified the defendant and Odom as the two men who killed the decedent, and the defendant later confessed to Brandon that the killing was "my work." The jury was free to believe all, some or none of the testimony that was presented at trial. The jury was in the best position to assess the credibility of each of the witnesses and to determine the reliability of testimony. And the identification evidence presented was sufficiently persuasive so that the guilty verdict does not "shock one's sense of justice." Therefore, the verdict was not against the weight of evidence.

Accordingly, for all of the foregoing reasons, the judgments of sentence should be affirmed.

BY THE COURT:

M. TERESA SARMINA     J.

8