J-S52022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RYAN WOODY, | |
| Appellant | No. 2094 WDA 2014 |

Appeal from the Judgment of Sentence of August 22, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014652-2013

BEFORE:  SHOGAN, OLSON and WECHT, JJ.

MEMORANDUM BY OLSON, J.:    **FILED SEPTEMBER 09, 2015**

Appellant, Ryan Woody, appeals from the judgment of sentence entered on August 22, 2014, following his bench trial convictions of two counts of aggravated assault and one count each of criminal attempt homicide, carrying a firearm without a license, possession of a firearm by a minor, and recklessly endangering another person.[1]  Upon review, we affirm.

The trial court set forth the facts of this case as follows:

> At approximately midnight on July 4, 2013, [] victim, [K.G.], heard someone yelling her name up to her bedroom window.  She recognized the voice and when she looked out the window, she recognized the person.  She said the person was [Appellant].  He asked her to come downstairs and let him into the apartment building door.  She said, 'no.'  He repeatedly kept calling her name.  She told him to

---

[1]  18 Pa.C.S.A. §§ 2702, 901, 6106, 6110.1, and 2705, respectively.

quit calling her name and that was the end of it. She got back into bed.

[K.G.] next came into contact with [Appellant] on July 6, 2013 at approximately 9:30 p[.]m[.], when he asked her if she would give him a ride to Clairton. She told him she would take him when she was done washing her car. After about twenty (20) minutes, [Appellant] returned and was ready to go to Clairton. [K.G.] had known [Appellant] by his nickname 'Rye' for about a year or so. [K.G.] and [Appellant] got into the car, she was driving towards Clairton, making conversation with [Appellant] when he said she went too far, he had to pick something up back there. She turned her car around, went back, and he pointed to the street, Lincoln Way. [K.G.] asked why he was going there, nobody lived there in years.

As she drove onto Lincoln Way, she turned her car around immediately because there is only one way in and out. She sat inside[] her car for about fifteen (15) minutes as [Appellant] went into a house. She could see him inside the house flashing a light like a phone or something. She did not see any other individuals in the house. As [Appellant] walked out of the house, he was on his phone saying to someone, 'I left that there for you.'

[Appellant] was walking toward the driver's side of the car and the next thing [K.G.] knew was that he hit her in the eye with a gun saying, 'Bitch, I hate you.' As soon as he hit her, he started shooting at her. [K.G.] saw the barrel of the gun pointed towards her. She was struck in her left shoulder and her back. She heard two shots fired. She immediately put the car's gear into drive and took off as fast as she could. She went into a gas station right down the street. It was the Exxon located on State Route 837. She was transported to Mercy Trauma Unit.

[K.G.], during trial, chose to show the [c]ourt the scars located on her left shoulder and the middle of her back.

Later that same night, [K.G.] was interviewed by Detective [Anthony] Perry. She indicated that she knew who the person was that shot her. She was shown a photo array. She did not feel the detective was being coercive or

suggestive in any way. She did not hesitate in any way when she circled the individual in the number 1 position. She signed the array and dated it July 7, 2013, adding 2:09 a.m., Shooter. She identified [Appellant] in the courtroom on August 20, 2014 as being the person who shot her.

Detective [] Perry testified that he compiled a photo array and showed it to [K.G.] []. She seemed clear-headed at the time. Detective Perry stated she made no hesitation whatsoever when she chose the individual in position 1, [Appellant], from the photo array.

Detective Perry further testified he put together the photo array using a system called the Commonwealth Photo Imaging Network or CPIN – a database of photographs he can draw from – and then placed [Appellant's] photo in the array with photos of seven other black males with similar characteristics.

When Detective Perry went to Mercy Hospital to interview [K.G.], on the date of the incident, he testified again that based upon his experience as a police officer, she was not under the influence of alcohol or any controlled substances. Based upon his conversation with [K.G.], and with the information she gave, he developed the suspect: [Appellant].

Detective Perry completed a form and sent it to the Pennsylvania State Police to determine if [Appellant] had a valid license to carry a firearm in the Commonwealth of Pennsylvania. [Appellant] did not have a valid license to carry a firearm and he was seventeen (17) at the time of the incident.

Trial Court Opinion, 4/22/2015, at 3-6 (record citations omitted).

Procedurally, the case progressed as follows:

On August 20, 2014, [Appellant] proceeded to a non-jury trial [before the Criminal Division of the Court of Common Pleas of Allegheny Court]. At the conclusion of the trial on August 21, 2014, [the trial c]ourt adjudicated [Appellant] guilty of all charges. On August 21, 2014, [the trial c]ourt sentenced [Appellant] with regard to [… c]riminal [a]ttempt,

to a period of incarceration of no less than [five] (5) years and no more than ten (10) years, with a seven (7) year period of probation [thereafter]. With regard to the remaining counts, [the trial c]ourt imposed no further penalty.

On or about August 27, 2014, [Appellant] filed [a p]ost [s]entence [m]otion[] pursuant to Pa.R.Crim.P. 720. The [m]otion contended that the [c]ourt's verdict was against the weight of the evidence.

On December 15, 2014, [the trial court denied Appellant's post-sentence motion].

*Id.* at 2 (record citations omitted). This timely appeal resulted.[2]

On appeal, Appellant presents the following issue for our review:

Did the trial court abuse its discretion in affording significant weight to the testimony of the complaining witness, and thus finding [Appellant] guilty of all charges, when that testimony was the only evidence connecting [Appellant] to the events of July 6, 2013, and that testimony was not credible and even contradicted by 911 call logs, cell phone records, medical records, and other evidence?

Appellant's Brief at 3.

Appellant argues his convictions are against the weight of the evidence presented. He maintains that "[o]ther than the word of [K.G.], no forensic evidence links [Appellant] to [K.G.'s] car or any firearms" and the Commonwealth could have conducted a fingerprint analysis of [K.G.'s]

_____

[2] On January 6, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on January 8, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 22, 2015.

vehicle, but did not. *Id.* at 12. He claims the trial court "abused its discretion in affording so much weight to [K.G.'s] identification of [Appellant] as her assailant" where the lighting was poor, she did not know if there was another individual already inside the house Appellant entered, and she was frantic and unfocused at the scene of the crime. *Id.* at 9. Further, Appellant avers that his telephone records and the timing of [K.G.'s] 911 call belied her testimony that Appellant was talking on his cellular phone to another person immediately preceding the altercation. *Id.* at 9-10. Finally, Appellant argues [K.G.'s] trial testimony was questionable because her medical records suggest she was not struck in the face with a gun prior to the shootings and that she was under the influence of alcohol on July 6, 2013, despite her protestations she was not. *Id.* at 10-11.

We review a weight of the evidence claim under the following legal principles:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony[.] Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 758 (Pa. Super. 2014) (internal citations, quotations and brackets omitted).

The trial court determined that K.G.'s identification of Appellant as her assailant was credible because she: (1) knew Appellant and had previous interactions with him; (2) identified him immediately from a photo array at the hospital, and; (3) was unequivocal that Appellant was the shooter. Trial Court Opinion, 4/22/2015, at 8.

Upon review of the record, we discern no abuse of discretion. The verdict does not shock a sense of justice. K.G. knew Appellant, they were alone at the time of the altercation, and she never wavered in naming Appellant as her shooter. N.T., 8/20/2014, at 52-54, 57-59. The trial court determined that the victim's testimony regarding the amount of alcohol she consumed and her statement that Appellant lodged a telephone call immediately prior to the altercation were, at most, minor inconsistencies. Ultimately, the trial court credited K.G.'s version of events and we will not

disturb that determination. Moreover, there was corroborating testimony from police. Detective Timothy Langan processed the crime scene and testified that he found bullet holes in K.G.'s vehicle that were consistent with her gunshot wounds. *Id.* at 34. Detective Perry, who interviewed K.G. at the hospital shortly after the incident, testified K.G. was clear-headed, did not appear to be under the influence of alcohol, and chose Appellant from a photo array with "no hesitation whatsoever." *Id.* at 74-77. The record simply does not support Appellant's suggestion that another unknown person perpetrated the crime. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2015