J-S16019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREEK DENMARK | : | |
| | : | |
| Appellant | : | No. 917 EDA 2022 |

Appeal from the PCRA Order Entered March 3, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0006336-2013

BEFORE: DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                  **FILED MAY 31, 2023**

Tyreek Denmark (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act.[1] We affirm.

This Court recounted the underlying facts:

> On March 29, 2013, at approximately 11:00 a.m., Philadelphia Police Officer Andrew Monroe and his partner responded to a call of domestic violence on the 5400 block of Regent Street in Philadelphia. The officers met with Erica Hood [(Hood)], the alleged victim of domestic violence. While conducting a walk-through of Hood's property to secure the premises, Officer Monroe discovered [Appellant] hiding in the basement. As Hood was uncooperative with police officers at that time, no further action was taken by police. Officer Monroe observed Thyeem Snipe [(Snipe)] … standing across the street as the officer participated in the investigation. One week prior, Snipe and Hood had been in a physical altercation with each other[,] which was broken up by police.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

After police left the scene, [Appellant], Jonathan Shaw [(Shaw)], co-defendant Paul Tucker Bennett, and Tyleal Denmark [(Tyleal)] ([Appellant's] cousin), were hanging out on Regent Street outside of Bennett's home. [Appellant] and Bennett were standing on the porch to Bennett's home while Tyleal and Shaw were located on the sidewalk. Snipe was getting on the porch wall outside of 5519 Regent Street, which was located next door to Bennett's home. Bennett appeared to hand an object to [Appellant]. [Appellant], with a gun in his hand, approached Snipe and shot him multiple times. [Appellant] then left the scene in his car, parking it a short distance away.

Snipe suffered a total of five gunshot wounds. … Each of these gunshot wounds was fatal on its own. As a result of a gunshot wound to the neck, Snipe's cerebral spinal cord was severed, resulting in near instantaneous death.

Police Officer Monroe, who had responded to the earlier domestic violence call, heard the shots fired by [Appellant] and responded to 5519 Regent Street at 12:09 p.m. Officer Monroe observed [Appellant] walking northbound on 55th Street towards Chester Avenue. Officer Monroe further observed Snipe lying on the porch of 5519 Regent Street.

Eyewitness Jameel Starnes [(Starnes)] told police at the scene that [Appellant] was the shooter, and [Appellant] was taken into custody. Police never recovered the murder weapon.

*Commonwealth v. Denmark*, 144 A.3d 184 (Pa. Super. 2016) (unpublished

memorandum at 2-3).

The PCRA court summarized the procedural history that followed:

On October 10, 2014, following a jury trial before this [c]ourt, [Appellant] was convicted of one count each of first-degree murder (18 Pa.C.S. [§] 2502) and possessing an instrument of crime (18 Pa.C.S. [§] 907) ("PIC"). The [c]ourt immediately imposed the mandatory sentence of life in prison for the murder charge (18 Pa.C.S. [§] 1102(a)(1)) and imposed no further penalty on the PIC charge. [Appellant] was tried with his co-defendant, … Bennett, who was acquitted of all charges….

… On March 1, 2016, the Superior Court affirmed [Appellant's] judgment of sentence and on August 22, 2016, the Supreme Court of Pennsylvania denied *allocatur*. [***Commonwealth v. Denmark***, 144 A.3d 184 (Pa. Super. 2016), ***appeal denied*** 156 EAL 2016 (Pa. filed August 22, 2016.)] ….

On August 21, 2017, [Appellant] filed a *pro se* petition pursuant to the [PCRA]. David Rudenstein, Esquire, was appointed to represent [Appellant] on October 27, 2017. On June 15, 2018, Mr. Rudenstein filed an amended petition ("First Amended Petition") alleging that Commonwealth witness [] Starnes was paid to testify falsely at [Appellant's] trial. The Commonwealth filed a motion to dismiss the petition on December 6, 2018. Shawn Page, Esquire, entered his appearance on behalf of [Appellant] on May 1, 2019. Mr. Page filed an amended petition ("Second Amended Petition") on November 4, 2020, in which he adopted, by reference, the First Amended Petition and averred that [Appellant] intended to present testimony from Starnes's mother to support the claim that Starnes's trial testimony was false. The Commonwealth filed a second motion to dismiss on February 17, 2021. [Appellant] filed a response to the Commonwealth's motion to dismiss on April 12, 2021 ("Response to Motion to Dismiss")[,] to which he appended a signed statement from Starnes's mother, Darlene Oliver [(Oliver)], claiming that Starnes could not have witnessed the murder[; Appellant also appended] a photo of a signed and notarized affidavit from Starnes recanting his trial testimony ….

On March 3, 2022, the Court held an evidentiary hearing on the issues related to the recantation of Starnes and the testimony of Oliver. At the conclusion of the hearing, the [c]ourt dismissed [Appellant's] petition. [Appellant] filed a notice of appeal on April 1, 2022. The [c]ourt issued an order pursuant to Pa.R.A.P. 1925(b) directing [Appellant] to file a Concise Statement of Errors Complained of on Appeal by April 26, 2022.

PCRA Court Opinion, 6/13/22, at 1-2. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following questions:

[1.] Did the trial court err in denying the Appellant relief under the [PCRA]?

- 3 -

[2.] Did the trial court err [or] commit an abuse of discretion by overruling a request for a continuance of the evidentiary hearing to allow then-counsel the opportunity to present the testimony of [] Starnes regarding his location on the night in question, payments made to him by law enforcement and what, if anything he observed on the night in question[?]

Appellant's Brief at 8.

This Court's standard of review "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation and quotation marks omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted). Our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. **Commonwealth v. Fahy**, 959 A.2d 312, 316 (Pa. 2008).

Appellant argues the PCRA court improperly denied his request for a continuance to obtain evidence of the Commonwealth's payment to Starnes. Appellant's Brief at 13, 16. Appellant claims: "The document request had been outstanding for several YEARS. Counsel for the Commonwealth recognized that prior counsel had mishandled the request. This was the first request for a continuance by the defense." **Id.** at 15. (citation omitted).

Appellant points out that the murder weapon was not recovered, and no witnesses had come forward prior to Starnes's statement. *Id.* at 16. Appellant asserts that while "the [PCRA c]ourt was correct that [there] would be a delay, that needs to be balanced against the constitutional demand for a fair trial." *Id.*

Appellant directs our attention to the "clear and unequivocal" testimony of Oliver, Starnes's mother. *Id.* at 17. Appellant asserts "the likelihood of whether Oliver's testimony would compel a different verdict is quite high." *Id.*

Pertinently, the denial of a motion for a continuance

is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. An abuse of discretion is not merely an error of judgment; rather[,] discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record[.] … We will not reverse a denial of a motion for continuance in the absence of prejudice.

*Commonwealth v. Antidormi*, 84 A.3d 736, 745-46 (Pa. Super. 2014) (citations and quotation marks omitted).

The PCRA court explained the context and rationale for its decision:

[T]he [PCRA c]ourt's denial of [Appellant's] request for a last-minute continuance was entirely reasonable and well within its discretion. At 10:25 a.m. on the day of the evidentiary hearing, which was scheduled to begin at 9:30 a.m., [Appellant's counsel] informed the [c]ourt that his witnesses were on the way to the courthouse and requested additional time to get them there. N.T. 3/3/2022 at 21-23. The [PCRA c]ourt recessed to allow the witnesses to arrive. *Id.* at 27. Following the recess, the defense called Oliver to the stand. *Id.* After Oliver [testified], [Appellant's counsel] stepped out of the courtroom to check for Starnes and, not finding him, the defense rested. *Id.* at 65. The

- 5 -

Commonwealth then presented the testimony of Officer Riddick. *Id.* at 73-84. After the Commonwealth rested, [Appellant] requested another recess to attempt to get Starnes to appear. *Id.* at 87-91. The [PCRA c]ourt agreed to hear argument on [Appellant's] remaining claims and then take a lunch break to accommodate [Appellant's] request. *Id.* at 91, 104. When Starnes had still failed to appear after the lunch recess, [Appellant] requested that the [c]ourt bifurcate the hearing. *Id.* at 104. The [c]ourt denied the request on the grounds that the PCRA petition had been pending for over four years, and [Appellant] had many months' notice of the hearing in order to line up his witnesses. *Id.*

PCRA Court Opinion, 6/3/22, at 8-9. The PCRA court added:

[I]t was obvious that Starnes was intentionally hiding, and that a continuance would not likely result in him appearing and rendering testimony helpful to the defense. At 10:45 a.m., on the morning of the evidentiary hearing, defense counsel advised the [c]ourt that he had spoken to [Appellant's] mother, and that she had confirmed that she was with Starnes and Oliver (Starnes's mother), and that they were on their way to the courthouse. N.T. 3/3/2022 at 22-23. Only Oliver showed up[] and claimed to have no knowledge of Starnes's whereabouts. *Id.* at 33. Moreover, Starnes had been the subject of substantial attempts at witness intimidation as a result of his testimony identifying [Appellant] as the shooter in this case.[3] Importantly, defense counsel never represented that Starnes had been subpoenaed to testify at the evidentiary hearing, and he never requested the [c]ourt to take action to require Starnes to appear.

_____

[3] Starnes testified at trial that he failed to comply with subpoenas from the Indicting Grand Jury in this case on numerous occasions because he was afraid of retaliation, scared of "getting killed[,]" and did not appear until he was detained prior to testifying. N.T. 10/8/2014 at 32-33, 83. He testified that the only reason he came to court during the trial was because he did not want to be detained again. *Id.* at 34. Following Starnes's trial testimony, the [c]ourt was informed of inappropriate behavior by spectators both inside the courtroom and immediately outside of the courtroom. *Id.* at 85. The [c]ourt was made aware that spectators were "making inappropriate threatening comments [and] acting in an inappropriate way." *Id.* The [c]ourt warned

- 6 -

the gallery that the behavior would not be tolerated and that [identification] would be required to enter the courtroom from that time on. ***Id.*** at 85-86.

_____

Additionally, the resolution of [Appellant's] petition had been delayed prior to the evidentiary hearing by 17 continuances that had been requested by the defense. Since [Appellant] declined to appear for this hearing via video during the Covid-19 epidemic, the hearing was further delayed for nearly a year. Accordingly, the [c]ourt did not abuse its discretion when it denied [Appellant's] request for another continuance in order for Starnes to testify. No relief is due.

***Id.*** at 9-10 (footnote in original, remaining footnotes omitted).

With regard to Appellant's claim that the Commonwealth withheld evidence of its payment to Starnes, the PCRA court cited applicable law in explaining:

Under ***Brady v. Maryland***, 373 U.S. 83 (1963), exculpatory evidence not disclosed to the defense will give rise to a due process violation and will require a new trial if the exculpatory evidence is "material" either to guilt or punishment. [***Id.*** at] 87; ***see also*** Pa.R.Crim.P. 573(B)(1)(a) (specifying, as mandatory discovery, "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth"). Therefore, to establish a ***Brady*** violation, [Appellant] must demonstrate that: "(1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment." ***Commonwealth v. Simpson***, 66 A.3d 253, 264 (Pa. 2013). … [T]o establish prejudice, [Appellant] "must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability for these purposes is one which undermines confidence in the outcome of the trial." ***Id.*** (internal quotations and citations omitted). Moreover, "***Brady*** evidence may not be cumulative of other evidence, cannot have been equally available to the defense, and cannot have been

discoverable through the exercise of reasonable diligence." ***Id.*** (internal citations omitted).

….

[Appellant] failed to produce any evidence to show that Starnes was promised or received any form of payment **pre-trial**, let alone that the Commonwealth withheld information regarding these alleged payments.[2] At the evidentiary hearing, [Appellant] failed to present Starnes as a witness, even after the [c]ourt granted multiple defense requests for additional time during the day to locate him. N.T. 3/3/2022 at 21-22, 26, 87-90, 104. Since [Appellant] failed to prove that the Commonwealth concealed anything regarding payments or promises to Starnes, the [c]ourt properly rejected [Appellant's] ***Brady*** claim premised upon such concealment.

---

[2] Before the evidentiary hearing, while addressing a preliminary issue regarding a defense motion for a continuance, [Appellant] provided the [c]ourt with a letter from the Pennsylvania Office of the Attorney General and a letter from the Philadelphia District Attorney's Office detailing payments made to Starnes. N.T. 3/3/2022 at 14-15. The Office of the Attorney General paid **post-trial** hotel expenses in the amount of $2,643.90 from its Witness Relocation Program. Letter from Office of the Attorney General dated 2/14/2022. The Philadelphia District Attorney made two **post-trial** per diem payments in the amount of $210 each. Letter from the District Attorney's Office dated 2/25/2022. These letters were never made part of the record. In any event, they only document **post-trial** payments to Starnes, and fail to support [Appellant's] claim that Starnes was promised anything prior to testifying.

As to the claim that the Commonwealth withheld evidence regarding Starnes's "whereabouts on the time and place of the incident," Statement of Errors at ¶ 30(a), this claim was never raised in the PCRA court. Because [Appellant's] counsel is raising this issue for the first time on appeal, the issue is waived. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.") ….

PCRA Court Opinion, 6/3/22, at 5-7 (footnote in original, emphasis added).

In sum, the record supports the PCRA court's findings and its legal conclusions are proper. *Sandusky*, 203 A.3d at 1043. Appellant's issues do not merit relief.[2]

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2023

_____

[2] To the extent Appellant challenges the PCRA court's credibility findings regarding Oliver, the "PCRA court's credibility determinations, when supported by the record, are binding on this Court[.]" *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citation omitted). "We will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding." *Commonwealth v. Flor*, 259 A.3d 891, 911 (Pa. 2021) (citation omitted).