J-A16036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TERRALE JAMAR BLOW, JR. :
:
Appellant : No. 701 WDA 2023

Appeal from the Judgment of Sentence Entered May 16, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001775-2022

BEFORE: KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: November 13, 2024**

Terrale Jamar Blow, Jr. appeals from the judgment of sentence entered

following his conviction for persons not to possess firearms.[1] He challenges

the sufficiency of the evidence. We affirm.

The trial court aptly summarized the facts presented at the non-jury trial

as follows:

> On or about January 22, 2022, Officer Darion Feist of the
> City of Pittsburgh police[] responded to an eleven[-]round
> Shotspotter notification at 958 Woodlow Street in Crafton
> Heights. While on scene, Officer Feist was approached by a
> juvenile who handed him a bag of live ammunition as well
> as a spring to a gun magazine that he found from the
> hallway of 958 Woodlow Street. Also present on scene was
> Officer Jordan Price of the City of Pittsburgh police who was
> approached by another juvenile by the name of D. Ferguson,
> who informed officers he was hanging out with another
> individual by the name of "Blow" earlier that evening when

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

"Blow" stated he was going to buy some weed and told Ferguson to come with him. Ferguson related that "Blow" entered the vehicle and exited and that is when the shooting began.

The following day, Detective Matthew Smith of the City of Pittsburgh police began investigating the shooting further, including[] following up on the information provided by Ferguson. Detective Smith pulled surveillance footage from the area and the apartment complex of Mountain View Apartments at 950 Woodlow Street. Through their investigation, detectives and officers were able to identify [Blow] as one of the individuals in the video surveillance footage. Further[,] through investigation and surveillance footage, detectives were able to identify and observe [Blow] as a person involved in the shooting. Detectives testified that through surveillance footage they were able to determine that [Blow] was the individual shot at, while it did not appear that he returned shots. [Blow] is observed in surveillance footage with an L[-]shaped object in his hand and bullets falling to the ground in the area where the juvenile witness collected them and provided them to Officer Feist. Detective Smith testified that if the base plate of a firearm fails and comes off, the spring inside the magazine will come lo[o]se and could cause the bullets to fall to the ground –[ ]even if the gun is not smashed or hit in some manner. Detective Smith testified that he was able to discern a firearm in [Blow's] right hand in the video surveillance that he reviewed. Detective Smith also testified that he was able to observe the bullets falling out of the extended magazine of the firearm held by [Blow] in the video surveillance.

Rule 1925(a) Opinion, filed 10/3/23, at 3-4. The court found Blow guilty of persons not to possess firearms. It sentenced him to four to eight years' incarceration, followed by two years of reporting probation. This timely appeal followed.

Blow raises the following issue: "Was the evidence insufficient to support the conviction of Mr. Terrale Blow, Jr. of Possession of a Firearm Prohibited

where it did not establish, beyond a reasonable doubt, that he possessed a firearm as defined by statute?" Blow's Br. at 5.

Blow challenges the sufficiency of this evidence. Our standard of review is settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa.Super. 2014) (citation omitted).

To prove possession of a firearm by a prohibited person, the Commonwealth must show that the defendant was: (1) prohibited from possessing a firearm under Section 6105(b), and (2) possessed a firearm. **See** 18 Pa.C.S.A. § 6105(a)(1). A firearm includes any weapon that is "designed to or may be readily converted to expel any projectile by the action of an

explosive or the frame or receiver of any such weapon." 18 Pa.C.S.A. § 6105(i).

Blow argues that the Commonwealth failed to prove he possessed a firearm. He maintains that the evidence presented "failed to establish beyond a reasonable doubt that the item seen in the video could be deemed a 'firearm' under the statute." Blow's Br. at 12-13. He notes that "[n]o weapon was . . . recovered from the scene or [his] residence" and suggests that the object seen in the video could have been "a baton or police billy club," a toy handgun, or a cell phone cover. *Id.* at 16, 21, 22, 23. He further argues that he could have been holding "something else with a space to carry bullets inside," rather than a firearm. *Id.* at 19.

The trial court rejected Blow's sufficiency claim. It cited Detective Smith's testimony and found it "credible and persuasive in light of his knowledge, training and experience with firearms[.]" Rule 1925(a) Op. at 4. The court also relied on its "own observations of the surveillance footage" and concluded that Blow had a firearm in his hand*. See id.* Moreover, the court noted Detective Smith's "credible and persuasive" testimony "regarding the spring failing and the resultant ammunition falling as observed in the video." *Id.* at 4-5. We agree with the trial court's conclusion.

Although the police did not recover a firearm from Blow, the evidence sufficiently established that Blow possessed a firearm. Detective Smith testified that in the surveillance footage, he observed Blow running into the apartment building with what appeared to be a firearm in his right hand. ***See***

N.T., Trial, 2/16/23, at 38, 41, 110, 111. Detective Smith also testified that bullets were seen falling from the bottom of the firearm onto the ground in the hallway, which was consistent with a magazine spring failure. **Id.** at 41, 107-08. The bullets and magazine spring were later recovered by a juvenile and handed over to one of the responding officers. **Id.** at 16. Additionally, he explained that nothing in the video suggested that Blow was holding anything other than a real firearm. **Id.** at 108.

The trial court as fact-finder was free to assess the witness's credibility, weigh the evidence, and "to believe all, part or none" of it. **Antidormi**, 84 A.3d at 756. Viewing all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth, the evidence was sufficient to enable the court to conclude that Blow possessed a firearm. We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/13/2024