J-S27040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NAFIS MATTHEWS | : | |
| | : | |
| Appellant | : | No. 2000 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 24, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001761-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NAFIS MATTHEWS | : | |
| | : | |
| Appellant | : | No. 2002 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 24, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001762-2021

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED AUGUST 22, 2025**

Appellant, Nafis Matthews, appeals *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his guilty plea to the charges of rape by forcible compulsion, robbery,

_____

[*] Former Justice specially assigned to the Superior Court.

and conspiracy[1] at lower court docket number CP-51-CR-0001761-2021 ("1761-2021"), as well as the charges of fleeing or attempting to elude the police and aggravated assault by vehicle[2] at lower court docket number CP-51-CR-0001762-2021 ("1762-2021").[3] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On January 12, 2021, Appellant abducted A.G. at gunpoint as she was walking home from her boyfriend's house. *See* N.T., 10/24/22, at 11.[4] Appellant forced A.G. into a car, which was driven by an unknown man.[5] The unknown man drove Appellant and A.G. to a pawn shop, where they sold her belongings, including her iphone and Airbuds. *Id.* The unknown man then drove to a gas station where Appellant forced A.G. to give him her ATM card so that he could remove money from her account. *Id.*

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3701(a)(1)(ii), and 903, respectively.

[2] 75 Pa.C.S.A. §§ 3733(a) and 3732.1(a), respectively.

[3] As discussed *infra*, Appellant's direct appeal rights were reinstated via the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545.

[4] The record does not contain Appellant's guilty plea colloquy; however, the facts underlying Appellant's guilty pleas were set forth during the sentencing hearing.

[5] We note the record reveals this man wore a mask, so A.G. was unable to identify him. The record is unclear as to whether the man was ever identified and charged in connection with the crimes. Further, as discussed *infra*, the day after the rape, Appellant was involved in a high-speed chase with the police, and an unknown man was also in the vehicle. *Id.* at 13. The record is unclear as to whether this is the same man with whom Appellant conspired during the robbery and rape of A.G.

The unknown man then drove Appellant and A.G. to Cobbs Creek area and, after parking the car, both men engaged in nonconsensual oral and vaginal intercourse with A.G. *Id.* The unknown man and Appellant then took A.G. home, removed her identification from her wallet, and told her to go inside the house to retrieve her phone charger. *Id.* Appellant advised A.G. that, since he knows where she lives, A.G. should comply. *Id.* A.G. complied, and after taking the phone charger, Appellant and the unknown man drove away. *Id.* A.G.'s parents arrived home soon thereafter and took her to the police station. *Id.*

Relevantly, the next day, Appellant and an unknown man were in a car, which the police stopped. *Id.* at 13. Appellant and the unknown man fled in the car, and the police engaged in a high-speed chase, which ended in a "terrible accident." *Id.* Specifically, D.H. was driving her car on the 6100 block of Market Street in Philadelphia when Appellant "jammed into her car." *Id.* D.H. suffered serious injuries from the accident.

At lower court docket number 1761-2021, the Commonwealth filed an Information charging Appellant with numerous crimes in connection with the robbery and rape of A.G. At lower court docket number 1762-2021, the Commonwealth filed an Information charging Appellant with numerous crimes in connection with the high-speed chase to elude the police, as well as the aggravated assault by vehicle of D.H.

On October 12, 2021, Appellant, represented by counsel, entered an open guilty plea to the crimes at both docket numbers as indicated *supra*, and on October 24, 2022, Appellant proceeded to a sentencing hearing for his convictions at both docket numbers. At the commencement of the hearing, Appellant's counsel confirmed that Appellant entered open guilty pleas with no agreement as to his sentence. ***Id.*** at 7. The trial court stated that it had "read the mental health, prior record score, and the PSI."[6] ***Id.*** at 6. Appellant's counsel reminded the trial court that "the nondeadly weapon used enhancement guidelines" were applicable. ***Id.***

Appellant's counsel requested the trial court impose a lenient sentence and asked the trial court to take several factors into consideration. ***Id.*** at 8. Specifically, she stated the following:

> [Appellant] first entered the system at the age of 14 not as a delinquent but as a dependent. He's had quite a few disruptive situations in his youth that resulted [in] him being in foster care. He has a substance abuse issue that manifests unfortunately in violent acts.
>
> When he is not using drugs, he is a very quiet, very reserved person. But, when he is using drugs, for some reason, just the way it reacts with him, things go incredibly bad. I'm not presenting that as an excuse but by way of explanation.
>
> And to explain to Your Honor, at the age of 22, [Appellant] is likely going to be a member of society again, and [it's necessary] to express to [Appellant] that it is essential going forward that he not use mind altering substances because these are the kinds of things that happen when he does.
>
> When he's not using substances, like I said, he's very quiet, he's very calm, he's very functional, he works. He's completed

_____

[6] We acknowledge "PSI" refers to a presentence investigation report.

[high] school. He's completed programs when he's not using drugs. But, when he is using drugs or drinking, things go horribly awry.

[Appellant], since being incarcerated, has made whatever steps he could to make whatever amends he could. He understands there's nothing he can do to alleviate what was done to [A.G.] in this case. He understands that he can't go back in time. He understands that he can't undo what he did. But, he has made significant movements in order to try to do what he can do.

He's taken responsibility, and he has very seriously taken responsibility. His guidelines as we discussed are 54 to 72 months plus or minus 12. Given the fact that he has taken responsibility, given the fact that his prior record score is a 1, I understand the significance of that 1, and given the fact that he is going to be registering as a sex offender for the remainder of his life, [leniency is warranted].

I'm asking Your Honor to take into account not only what I'm discussing here in open court but what we have discussed in the back. I'm asking Your Honor for a mitigated sentence of 3 and a half to 7 years of incarceration.

I'm asking Your Honor to order that—or to ask because it will be a state sentence, that he receive treatment for sexual issues, as well as treatment for his drug issues, which I'm not a doctor but it was in the mental health report. It's my belief from the belief of the evaluator that was a significant factor with regard to that unfortunate day with [A.G.].

So, I'm asking Your Honor, as I said, to mitigate and to take all those factors into consideration.

*Id.* at 7-10.

The Commonwealth reminded the trial court that Appellant was before the court for sentencing on two separate cases, which appeared to be a "crime spree between January 12th of 2001 and January 13th [of 2001]." *Id.* at 10. The Commonwealth reminded the trial court of the facts underlying Appellant's guilty pleas at both docket numbers as set forth *supra*. *Id.* at 11-14. The

- 5 -

Commonwealth noted the victims have been waiting for closure, and, hopefully, it can "start today." *Id.* at 14. The Commonwealth argued that, "given the nature, the violent and terrifying nature of the offense[s],…honestly, a 15 to 30 year sentence is appropriate, but [the Commonwealth] would ask for 10 to 20 at the minimum." *Id.* at 15. The Commonwealth further averred that, "[w]hatever sentence he gets, it needs to be followed by 3 years of reporting probation with the Sex Offender Unit of the state probation—or state parole." *Id.*

The trial court asked Appellant if he wished to make a statement on his own behalf, and Appellant responded, "No." *Id.* Appellant's counsel noted that Appellant has remorse. *Id.*

The trial court then stated the following on the record in open court:

> I have to be honest with you. I've been doing this for 15 years. This is one of the more horrendous cases I had to deal with in my entire career.
>
> I cannot imagine the terror that this bold woman suffered under your hands. To be abducted off the street while she is simply talking to her boyfriend.
>
> To be driven around with sort of death hanging over her head at any moment if you did not get your way. Apparently, you took your way.
>
> You had the temerity to take her to a gas station, force her to give you the card, and take $60 out of her account. You sold her belongings at a pawn shop while she was in the car cowering, fearing for her life.
>
> I can think of nothing worse than that. And, like I said, I've been doing this a long time. All the rape cases, you're up there in the top five.
>
> My original instinct when I came out here was the 15 to 30. However, certain information has come to light, which I have to

- 6 -

give you credit for. That is the only thing that is actually saving you from a sentence of 15 to 30 years.

Do you understand that?

I want you to understand this, you were really caught red-handed. Not only did you rape this poor woman, but you decided to play Grand Theft Auto in the streets of my city. It's bad enough what you did to this woman but then you took another woman down at the same time.

So, what is going to happen is this. On [docket number 1761-2021], on the rape [charge], it's going to be 7 and a half to 15 years' incarceration to be followed by 3 years of reporting probation. There is going to be an additional 5 years of probation, which will be concurrent with the other probation on the robbery. It will be no further penalty on the conspiracy.

Do you understand that? [For docket number 1761-2021, that's an aggregate of] 7 and a half to 15 [years in prison], to be followed by 5 years of reporting probation.

Now, I cannot let go what had occurred on the other case. On that case, [at docket number 1762-2021], on the fleeing and on the aggravated assault by vehicle, they will both be the same. It's going to be 1 and a half to 3 years' incarceration. That is going to be [concurrent to each other but] consecutive [to the sentence at docket number 1761-2021].

So, [for both cases, it's going to be an aggregate of] 9 to 18 years' incarceration [followed by 5 years of reporting probation].

*Id.* at 15-17.

The trial court noted that the victims were to be commended for coming forward and indicated that society should place no blame on the victims. *Id.* at 21. He noted that Appellant must account for his crimes and not be "free to do it again to someone else." *Id.*

The trial court advised Appellant that he would be a lifetime registrant under the Sex Offender Registration and Notification Act ("SORNA"), and the trial court provided Appellant with his registration and reporting requirements.

*Id.* at 19. The trial court noted that Appellant would be given credit for all time served.

Thereafter, on October 27, 2022, Appellant filed a counseled motion for reconsideration of his sentence at both lower court docket numbers. Specifically, Appellant contended that the trial court violated 42 Pa.C.S.A. § 9721(b) since the trial court focused exclusively on Appellant's criminal conduct without regard to his rehabilitative needs. Appellant also contended the sentence was grossly disproportionate to his crimes, and the trial court failed to consider the mitigating factors, including Appellant's background and character. He argued the trial court did not impose an individualized sentence. He averred that the aggregate sentence was unreasonable and excessive.

The trial court did not rule on Appellant's post-sentence motion; however, on February 28, 2023, the motion was marked on both docket numbers as denied by operation of law. Appellant did not file a timely direct appeal.

However, at both lower court docket numbers, on or about October 20, 2023, Appellant filed a timely *pro se* PCRA petition. After counsel was appointed, counsel amended the petition seeking the restoration of Appellant's direct appeal rights due to the ineffective assistance of trial counsel. By order entered on July 16, 2024, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* at both docket numbers. Thereafter, on July 26, 2024, with the assistance of counsel, Appellant filed a separate notice of appeal at

each lower court docket number, and this Court *sua sponte* consolidated his appeals. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issue in his "Statement of the Questions Involved" (verbatim):

> Whether Appellant's sentence was unduly harsh and excessive?

Appellant's Brief at 7 (unnecessary capitalization omitted).

On appeal, Appellant contends the trial court erred in imposing an excessive aggregate prison term of nine to eighteen years for both cases. He specifically contends the trial court failed to consider his rehabilitative needs and focused primarily on his criminal conduct. He also suggests the trial court did not consider adequately the mitigating circumstances, including Appellant's background in foster care, his completion of high school, his substance abuse problems, and his age. Appellant avers that, because of its shortcomings, the trial court did not impose an individualized sentence.

Appellant's claims present a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa.Super. 2016) (citation omitted). "[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Derry*, 150 A.3d at 991 (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether [the] [a]ppellant preserved his issues; (3) whether [the] [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of

- 9 -

appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa.Super. 2011) (citation omitted). Here, assuming, *arguendo*, all of these requirements have been met, we conclude Appellant's sentencing claims are meritless.

Our standard of review concerning the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hyland***, 875 A.2d 1175, 1184 (Pa.Super. 2005).

42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Furthermore,

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S.A. §

- 10 -

9781(c). Under 42 Pa.C.S.A. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S.A. § 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S.A. § 9781(c).

***Commonwealth v. Bricker***, 41 A.3d 872, 875-76 (Pa.Super. 2012) (citations omitted).

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where presentence reports exist, we shall…presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

***Commonwealth v. Antidormi***, 84 A.3d 736, 761 (Pa.Super. 2014) (quotation marks and quotation omitted).

Moreover, 42 Pa.C.S.A. § 9725 sets forth the following regarding a sentence of total confinement:

**§ 9725. Total confinement**

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

- 11 -

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S.A. § 9725 (bold in original).

Here, as indicated *supra*, in sentencing Appellant, the trial court specifically stated it was considering the relevant sentencing guidelines and prior record score. N.T., 10/24/22, at 6. The trial court acknowledged it was sentencing Appellant for guilty pleas entered under two separate lower court docket numbers. ***Id.*** at 5. The trial court acknowledged it had reviewed the presentence investigation report and mental health report. ***Id.*** at 6.

Further, the trial court permitted Appellant's counsel to set forth in detail the mitigating factors. ***Id.*** at 7-10. Thereafter, although the Commonwealth indicated that, because of the "violent and terrifying nature of the offenses," an aggregate sentence of fifteen to thirty years in prison would be appropriate, the Commonwealth stated that it would be satisfied with an aggregate minimum of ten to twenty years in prison. ***Id.*** at 14-15.

Still, although the trial court specifically stated this was a "horrendous case," the court indicated that it considered the information from Appellant's counsel, and, thus, it was imposing an aggregate prison term less than that recommended by the Commonwealth. ***Id.*** at 16. The trial court then imposed an aggregate sentence of nine years to eighteen years in prison for both cases. In so doing, the trial court also acknowledged the suffering of the victims, as

well as the need to prevent Appellant from continuing with his actions. *Id.* at 21.

Contrary to Appellant's averments, the record reveals the trial court considered the need to protect the public, the gravity of the offense as it relates to the impact on the victims, and the rehabilitative needs of Appellant as required by the Sentencing Code under Subsection 9721(b). While the trial court acknowledged the violent nature of Appellant's crimes, we disagree with Appellant that the trial court focused solely on the crimes in imposing the sentences. Rather, the trial court weighed the factors under Subsection 9721(b) as it was required to do. *See Bricker*, *supra*.

Moreover, not only do we presume the trial court considered the mitigating factors since it specifically acknowledged it reviewed the presentence investigation report, but the trial court specifically noted it was swayed by the mitigating factors such that it imposed an aggregate sentence less than that recommended by the Commonwealth. *See Antidormi*, *supra*.

Further, it is worth noting that the aggregate sentence at issue here resulted from two separate cases, and Appellant is not entitled to a "volume discount" for his crimes. *Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa.Super. 2008). Stated succinctly, the record demonstrates the trial court imposed an individualized sentence. *See Bricker*, *supra*. Thus, we conclude the trial court did not abuse its discretion in fashioning Appellant's sentence, and his claim has no merit.

For all of the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/22/2025